[Civil No. 1074.    Filed March 20, 1909.]

[100 Pac. 825.]

## THE TITLE GUARANTY AND SURETY COMPANY, a Corporation, Defendant and Appellant, v. W. F. NICHOLS, Plaintiff and Appellee.

1. DEPOSITIONS—EXHIBITS—ADMISSIBILITY.—Where, in an action on a bond guaranteeing the honesty of the cashier of a bank, it was sought to show embezzlement by the cashier, by showing the difference between the accounts kept by him and the accounts shown by the monthly statements of correspondent banks, identified by a witness and examined by defendant's expert, who reported to it, the statements referred to in the depositions of the officers of the correspondent banks, and returned as exhibits with the depositions, were properly received in evidence.

2. APPEAL AND ERROR—ADMISSION OF EVIDENCE—REVIEW.—The admission in evidence of a letter, over objection that it was immaterial

and irrelevant, and did not establish a fact, will not be reviewed on appeal, where neither the letter nor a summary of it appears in the abstract of the record.

3. EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY.—Where, in an action on a bond and its renewals guaranteeing the honesty of an employee, the renewals received in evidence did not disclose with whom the business of obtaining them was done, parol evidence on that subject was admissible.

4. APPEAL AND ERROR—OVERRULING OBJECTIONS TO QUESTION ASKED WITNESS—HARMLESS ERROR.—The overruling of an objection to a question asked a witness is not prejudicial, where the witness answered that he did not know.

5. SAME—ADMISSION OF EVIDENCE—REVIEW.—Where the answer of a witness to a question, objected to on the ground that the witness did not possess the requisite knowledge to answer, was not given in the abstract of record, nor in the brief, and the knowledge of the witness was not shown, the overruling of the objection could not be reviewed.

6. INSURANCE—GUARANTY INSURANCE—CONTRACT—CONSTRUCTION.—A bond guaranteeing the honesty of the cashier of a bank was issued on condition that the cashier would be required to make monthly accounts to the directors, and that his accounts would be examined monthly by the auditor of the bank. A renewal bond was issued on the application of the bank, stating that the accounts of the cashier had been examined and found correct, and that he had performed his duties in an acceptable manner. The evidence showed that the bank had examined the accounts of the cashier, and had found them correct, and that the auditor had examined the accounts monthly, and had found them correct. The cashier had embezzled the bank's money, but the examinations failed to detect it because of the method of concealing his crime. *Held,* that the renewal bond was enforceable because the bank had not guaranteed the correctness of the cashier's accounts, but had only stated that the accounts had been found correct on an examination.

7. SAME—SAME—ACTIONS—ISSUES.—Where, in an action on a fidelity bond, guaranteeing the honesty of the cashier of a bank, the bank showed a compliance with the bond by making the required examinations of the accounts of the cashier, and no issue was raised as to the competency of the auditor making the examinations, the questions as to the fidelity and diligence of the auditor, and the reasons why the cashier's defalcations were not earlier discovered, were immaterial, except in determining whether the examinations were made in good faith.

8. SAME—SAME—SAME—SAME.—In an action on a bond guaranteeing the honesty of the cashier of a bank, issued on the application of the bank, stating that the cashier's accounts had been examined, and had been found correct, an instruction that, if the statement

of . the bank was "untrue," there could be no recovery for any defalcation was misleading, as leading the jury to apply the word "untrue" to the correctness of the cashier's accounts, instead of applying it to the statement that an examination had been made, and that such examination found them correct.

9. Trial—Instructions—Refusal to Give Instructions Covered by the Charge Given.—It is not error to refuse a requested instruction substantially given in a correct instruction.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Edward Kent, Judge. Affirmed.

The facts are stated in the opinion.

*J. M. Jamison,* and *C. F. Ainsworth,* for Appellant.

Where the fact to be proved is evidenced by a written instrument or other writing, the original writing is the best evidence, and a copy is not admissible unless the original is produced or its absence satisfactorily explained, or unless a copy is made primary evidence by statute. 17 Cyc., p. 512; *Matteson* v. *Noyes,* 25 Ill. 591; *Central Branch R. R.* v. *Walters,* 24 Kan. 504; *Ruthven* v. *Clarke,* 109 Iowa, 25, 79 N. W. 454. Statements and representations made in the application for the renewal of the bond, when they are agreed to be used as a basis for the issuance of such renewals, form a part of the bond itself; and if such statements are untrue, the insured cannot recover for any loss sustained subsequent to the making of such application for the renewal of the bond. *American B. & T. Co. of Baltimore* v. *Burke et al.,* 36 Colo. 49, 85 Pac. 692; *Carstairs* v. *American Bond & T. Co.,* 116 Fed. 449, 54 C. C. A. 85; *Hunt* v. *Fidelity & Casualty Co.,* 99 Fed. 242, 39 C. C. A. 496; *Jeffries* v. *Economical Mutual Life Ins. Co.,* 22 Wall. (U. S.) 53, 22 L. Ed. 836; *Brady* v. *United Life Ins. Assn.,* 60 Fed. 727, 9 C. C. A. 252; *Guarantee Co. of N. A.* v. *Mechanics' Sav. Bank & T. Co.,* 183 U. S. 402, 22 Sup. Ct. 124, 46 L. Ed. 253; *United States Fidelity Co.* v. *Downey,* 38 Colo. 414, 120 Am. St. Rep. 128, 88 Pac. 451, 10 L. R. A., N. S., 323; *Willoughby* v. *Fidelity & Deposit Co.,* 16 Okl. 546, 85 Pac. 713, 7 L. R. A., N. S., 548, 8 Ann. Cas. 603; *Coal Co.* v. *United States Fidelity Co.,* 126 Fed. 89, 61 C. C. A. 145; *Rice* v. *Maryland Co.,* 103 Fed. 427, 43 C. C. A. 270.

Armstrong & Lewis, for Appellee.

"When it is necessary to prove the results of voluminous facts, or the examination of many books and papers, and the examination cannot be conveniently made in court, the result may be proved by the person who made the examination." *Schumacher* v. *Pima County,* 7 Ariz. 269, 64 Pac. 490; *Brown* v. *United States,* 142 Fed. 1, 73 C. C. A. 187; *Wright* v. *Chicago etc. Ry. Co.,* 118 Mo. App. 392, 94 S. W. 555; *Strand* v. *Great Northern Ry. Co.,* 101 Minn. 85, 111 N. W. 958, 112 N. W. 987. Where the statements made for the renewal of a bond are made in good faith, they are representations and not warranties, and actual falsity not known to the maker of the statement will not relieve the surety company. *Guthrie National Bank* v. *Fidelity & Deposit Co.,* 14 Okl. 636, 79 Pac. 102; *Fidelity & Deposit Co.* v. *West Bank* (Ky.), 94 S. W. 3 (5); *Brillion Lumber Co.* v. *Barnard,* 131 Wis. 284, 111 N. W. 483.

DOAN, J.—This action was brought in the district court of Maricopa county by W. F. Nichols to recover the sum of $20,000, being the amount of the penalty of a certain fidelity bond executed by the Title Guaranty and Surety Company, a corporation, guaranteeing the honesty of one John L. McDowell, cashier of the Union Bank and Trust Company of Phœnix. The record discloses that the Union Bank and Trust Company is a corporation engaged in a general banking business, and John L. McDowell was its cashier. In March, 1905, the bank applied to the surety company for a fidelity bond, guaranteeing the bank against loss through the dishonesty of its cashier, and other officers. The appellant is a corporation organized under the laws of Pennsylvania, whose business is the furnishing of such bonds. It is now, and was then, engaged in such business in this Territory. The surety company required the bank to make a certain statement, designated as "employer's statement," which was to be taken by the surety company as a basis for the issuance of the bond. This statement is referred to in the bond, and in the proceedings in the action, as the "schedule," and the part that becomes material in determining the issues involved reads as follows: "5. To whom, and how frequently will he account

for his handlings of funds and securities? Monthly; to the board of directors. 6. (a) What means will you use to ascertain whether his accounts are correct? Examination of books and count of money and securities. (b) How frequently will they be examined? Monthly or oftener. (c) By whom will they be examined? Our auditor. . . . It is agreed that the above answers are to be taken as a basis for the said bond applied for, or any renewal or continuation of the same that may be issued by the Title Guaranty and Trust Company of Scranton, Pennsylvania, to the undersigned, upon the person above named. Dated at Phœnix, Arizona, this tenth day of February, 1905. Signature of employer: Union Bank & Trust Company, by J. M. Swetnam, Vice-president [Official Capacity]. The above questions must be answered before this bond will be issued." Upon the receipt of this statement, and the payment by the bank of $120 premium, the surety company issued to the bank its bond, dated March 3, 1905, wherein, in consideration of the premium, it agreed, subject to the conditions and provisions of the bond, within three months after satisfactory proof of loss, to make good and reimburse the employer for any and all pecuniary loss sustained by it through the personal dishonesty of the employee for whom the company so became surety, amounting to larceny or embezzlement, in connection with the duties pertaining to the position to which he had been, or might be appointed by the employer, and for which the employee should be legally liable to the employer, occurring at any time after the tenth day of February, 1905, and prior to the tenth day of February, 1906, provided notice be given to the surety company as thereinafter stipulated.

Some of the conditions mentioned in the bond are: "If any employee has at any former period been a defaulter, and if such fact be known to the employer at the time of the execution of such bond, or at the time of the appointment of such employee, this bond shall be void as to such employee, and provided that upon an employee becoming guilty of an offense covered by this bond, the employer would, immediately on being requested to do so, lay information before a proper officer concerning the facts, and verify the same as required by law, and furnish the company every aid and assistance not pecuniary which will aid in bringing the employee to justice.

. . . So long as the company and employer agree so to do, this bond may be renewed and continued in force from year to year, and in case of any such renewal the company's liability on behalf of the employee then in the employer's service for whom the company may then be surety hereunder . . . shall be as continuous as if this bond had been originally written for the term including the period of such renewal. . . . If any statement made in the schedule furnished by the employer to the company and hereinbefore referred to, . . . be untrue, this bond shall be void as to the employee to whom such statement refers.'' On the 30th of January, 1906, this bond was renewed, beginning February 10, 1906, and ending February 10, 1907, for the expressed consideration of the further premium of $120 in the following language: ''In consideration of the sum of $120.00 the Title Guaranty and Trust Company of Scranton, Pennsylvania, a corporation duly incorporated under the laws of the state of Pennsylvania, hereby continues in force schedule bond No. 1200 in favor of the Union Bank and Trust Company in behalf of persons named in annexed schedule, in the proportions and for the sums therein specified for a period beginning the tenth day of February, 1906, and ending the tenth day of February, 1907, subject to all the covenants and conditions set forth and expressed in said schedule bond heretofore issued on the tenth day of February, 1905.'' This renewal, so far as the record discloses, was made without any statement or other declaration made by the employer, and solely upon the consideration of the premium then paid. Again, on June 7, 1907, the bond was renewed in the same terms for a term beginning February 10, 1907, and ending February 10, 1908. At the time of this renewal, there appears to have been made on the printed form provided by the surety company a statement by the employing bank as follows:

''To the Title Guaranty & Trust Company.

''This is to certify that on the 29th day of March, 1907, the books and accounts of Mr. John L. McDowell in our employ as cashier were examined by us and found correct in every respect, also by the State Bank Comptroller, and all moneys handled by him accounted for. He has performed his duties in an acceptable and satisfactory manner, and we know of no reason why the guaranty bond should not be con-

tinued.   His salary is now $175.00 and he is employed as cashier.

(Signature) "J. M. SWETNAM,

"Vice-president Union Bank & Trust Company, Employer.

"Dated May 6, 1907."

It further appears that McDowell remained in the employ of the bank as its cashier from the opening of the bank in December, 1904, until some time in the first days of September, 1907.   In the latter part of August, and early September, 1907, he was absent on his vacation, and during this time the bank first suspected that there was anything wrong with his accounts.   McDowell was immediately discharged, expert accountants were put on his books, and the embezzlement of more than $21,000 was discovered, almost all of which was concealed or covered by false and fraudulent drafts, drawn by the cashier on correspondent banks in San Francisco, Los Angeles, and New York.   Immediate notice of the embezzlement was given the surety company, which employed its own expert, Mr. Hilzinger, to examine the books of the bank.   His report to the surety company, which was placed in evidence by the plaintiff at the request of the defendant in the lower court, showed McDowell's embezzlement to amount to something over $21,000, being practically the amount established by the bank's expert, and claimed by the plaintiff to be correct.   McDowell was arrested in California, and testified in the lower court to the fact of his embezzlement in the various instances charged, and, so far as his knowledge went, to the correctness of the several amounts charged in the complaint to have been thus embezzled by him, and which constituted the aggregate amount claimed.   The surety company denied any liability on the bond, and, before suit was brought, the bond and claim was assigned for value to the plaintiff, W. F. Nichols.

The complaint alleges the issuance of the bond and renewals as above set forth; the embezzlement of its funds by McDowell to the amount of $21,882; notice to the defendant of such defalcation; a performance upon the part of the bank of all the conditions of the bond on its part; the demand on the surety company, and its refusal to pay; and the assignment of the debt for value to the plaintiff, Nichols.   The amended answer of the defendant contains a general denial of the

allegations of the complaint, and an affirmative defense on the ground, among others, that the bond and renewals were made in consideration of an expressed agreement, as a basis for the same, that the bank should have made, by its auditor, monthly examinations of the accounts of the cashier, and that the issuance of the bond and the several renewals were made upon the report to the surety company that such examinations had been made, and that the accounts of the said cashier were correct in every respect, all moneys handled by him accounted for, and that, if any defalcation of McDowell, mentioned in the complaint, occurred prior to the date of either of said renewals, then and in that event said statements by the bank as to the correctness of McDowell's accounts were false and untrue, and the defendant was not liable to account to the bank for any subsequent defalcations of said McDowell, for the reason that the renewal of the bond was, by reason of such false representations in procuring the same, absolutely void. Defendant also alleged that whatever defalcations had been made occurred by and through the neglect of the said bank to perform and carry out its part of the contract alleged in plaintiff's complaint, and that the company was not liable on any of the renewal contracts, "for the reason that said contracts were procured and obtained by the bank on its false, fraudulent, and negligent representations to the defendant in procuring and obtaining of such contracts or renewals." The case was tried to a jury, which rendered a verdict for the plaintiff in the sum of $20,000, in accordance with which verdict judgment for that amount was rendered by the court. Upon the denial of a motion for a new trial an appeal was taken from the judgment and order of the court, and the appellant presents in this court sixty-four assignments of error.

The counsel for appellant, instead of urging the assignments of error seriatim, has presented his argument under three general heads: First, that the exhibits returned with the depositions of the witnesses Morris, Lutz, and Schiefer, being severally officers of the three correspondent banks of the assignor of plaintiff, were improperly admitted in evidence; second, that the failure on the part of the appellee to prove a compliance on the part of its assignor with the conditions set forth in the bond in question, and in the application of

such assignor for the renewal bond for the periods beginning February 10, 1906, and February 10, 1907, and the court's charges to the effect that it is incumbent upon the appellant to show a noncompliance with such conditions, warrant a reversal of the judgment; third, that the refusal of the court to give the several instructions requested by the appellant constituted reversible error.

In support of the first proposition it is urged by the appellant that the main question involved in this case is the proof of the embezzlement on the part of McDowell, the cashier, which, if proven, would impose on the appellant a liability to the extent of such embezzlement within the limit of the amount of the bond. For the purpose of proving the embezzlement and the amount thereof the appellee sought to show the condition of the accounts between the Union Bank and Trust Company and the three correspondent banks in New York, Los Angeles, and San Francisco. The real condition of such accounts was sought to be proved by the use of monthly statements theretofore sent to the plaintiff's assignor by these several correspondent banks. The embezzlement was further sought to be proved by showing the difference between the accounts as shown by the books and accounts kept by the cashier of plaintiff's assignor and the accounts as shown by the statements of the three respective banks aforesaid.

Great stress is laid by the counsel for the appellant upon the alleged error committed by the court by permitting the three witnesses above named to be interrogated relative to these monthly statements sent by their several banks to the plaintiff's assignor, and to attach the same to their several depositions, upon the ground that these statements had not been submitted to the appellant's attorney, and, not being a part of the interrogatories, it was impossible for the appellant's attorneys to in any way cross-examine the witnesses relative to them. The record discloses that these statements had all been identified by the witness McDowell as the ones that had theretofore been sent by these banks to the Union Bank and Trust Company, and the defendant's expert had theretofore examined and reported to the defendant upon these same statements, and from the nature of the case the defendant would be aware that these would form the basis on which the amount alleged to have been embezzled by the

cashier would be arrived at. The interrogatories referring to the papers submitted with the deposition to the deponent in each of these instances were such as would plainly indicate to the defendant, who had in its possession the report of its expert, based upon these very statements, that they, and none other, were the "papers" or "statements" to which reference was made.

Numerous other rulings of the court on the admissibility of evidence have been assigned as errors. Upon a careful examination of these assignments, and the parts of the record to which they severally refer, we have not found any ruling of the court, either admitting or excluding evidence, that would constitute reversible error. In many instances the record fails to sustain the assignment as laid. In many other instances neither the assignment, brief of appellant, nor abstract of the record contains the data that would enable us to determine the merit of the assignment. As an instance, in assignment No. 3 "defendant objects to the offer of a letter, on the ground that it is irrelevant and immaterial," objection was overruled, the letter admitted, marked "Exhibit 'F.'" The defendant further objected to the letter on the ground that "the letter in no way tends to establish a waiver of the requirements of the bond." Neither the letter nor its contents, nor a summary of it, appears in the abstract of the record. The abstract of the record, folio 982, says: "Plaintiff's Exhibit 'F' not printed." We are unable to determine either the materiality or the relevancy of the letter, nor can we determine whether such letter tends to establish a waiver of the requirements of the bond, or whether the establishment of such waiver would be essential to the materiality of the letter. It might be material and relevant to other features of the case, whether its tendency was to establish a waiver or not. This is but one instance of several of like character.

Assignment of error No. 2 alleges that: "The court erred in overruling the objection of defendant to the offer of testimony, and in admitting the same as follows: 'In regard to the renewals of this contract, which has been offered in evidence, with whom was the business done?'" The objection was based on the grounds that "the renewals are the best evidence." The renewals are in evidence, and are printed in the abstract, but do not disclose with whom the business

was done. It is impossible to learn from them, or any of them, whether the business was done directly with the home office, or through the general agents at Denver.

Assignment No. 12, objection to question and answer, over-ruled. Error of the court is urged "for the reason that the witness is not shown to have read the forty statements re-ferred to, and that the witness is not shown to have any knowl-edge as to the state of the account referred to." The record discloses that the answer of the witness to the question was that he did not know, so that the error could not have been prejudicial, even if the ruling was technically erroneous.

Assignment No. 40: The witness was asked what was the true balance of account between the Anglo-California Bank, Limited, of San Francisco, and the Union Bank and Trust Company of Phoenix. Objected to for the reason that "the witness has not been shown to possess any knowledge as to the true state or condition; also the defendant objects to the answer for the reason that the same is not responsive, and is irrelevant and immaterial, and cannot bind the defendant." Objection was overruled. Answer is not given in the abstract of record, nor in defendant's brief, nor is the showing that had theretofore been made as to the knowledge of the witness given in either.

A careful examination of the several rulings claimed to have been erroneously made discloses no reversible error, and it would not be profitable to give in detail the result of the ex-amination in each instance.

The second ground for reversal urged by the appellant was "the failure of the plaintiff to prove the compliance by the bank with the conditions set forth in the bond, and the rul-ings, and the charges of the court to the effect that it was incumbent upon the appellant to show noncompliance with such conditions." The record does not sustain the appellant in the position thus taken. The complaint alleged that "in all things the said Union Bank and Trust Company did com-ply with the terms of the said bond and requirements thereof, and of the said defendant with reference to proof of its said claims, and did duly perform all the conditions contained in said bond on its part to be performed." The court in charg-ing the jury stated that the plaintiff claimed the issuance of the bonds, the embezzlements, the notice to the defendant, its

refusal to indemnify, the assignment for value to the plaintiff, and then charged them that it was incumbent upon the plaintiff to sustain these claims by proof, the language of the court being: "Now the defendant has entered a general denial in its answer, and therefore it is incumbent upon the plaintiff to make proof of these claims that it makes, as I have already stated; for it is for the plaintiff to establish, by a preponderance of the evidence, the fact that such is the case. Therefore, before the plaintiff can recover, he must establish to your satisfaction, by a preponderance of the evidence, these claims that are made on his behalf as I have stated." The only conditions of the bond set forth in the complaint are those relative to notice of loss. And proof of compliance with these appears in the record. The answer of the defendant, after denying the allegations of the complaint, affirmatively set up the allegations above referred to in our summary of the pleadings, and in regard to these affirmative allegations of the answer, the court charged the jury that: "This being a special defense that the defendant sets up, it is for the defendant, the surety company, to establish, by a preponderance of the evidence, to your satisfaction that these defenses that they claim exist. If it is so established to your satisfaction, you should not find a verdict for the plaintiff, but you should find a verdict for the defendant, the surety company. In that connection I will charge you it was the duty of the Union Bank and Trust Company to have made, by its auditor or other competent person, a monthly examination of the books and accounts of the bank kept under the supervision of McDowell, to determine if he was discharging his duty honestly; and if you find such investigation and examination of the books by a reasonably prudent person (the bank's auditor or other person) would have disclosed irregularities, which would have led to the early detection of any irregularities on McDowell's part, and if you find such examinations were not made, then I charge you that such failure on the part of the Union Bank and Trust Company relieves the defendant from liability, and the plaintiff cannot recover in this action." In applying for a renewal of the bond, the bank stated to the surety company that such examination had been made, and the books and accounts found correct in every respect, and all moneys handled by him accounted for. That the cashier

was discharging his duties in an acceptable and satisfactory manner, and the bank knew of no reason why his bond should not be continued. The record presented evidence to prove that this had been done. That the bank's auditor examined the accounts monthly, and from the examination made each month found the cashier's accounts correct, and the cash accounted for, and the bank, relying on such examinations and reports, knew no reason, at the time of application for renewal, to question the honesty of the cashier.

The defendant, in referring to these transactions, alleges that the renewals were granted upon the express contract and agreement that the books of account had been just prior thereto examined by the bank, and by the bank examiner of the territory, and that the same were correct in every respect; that McDowell had performed all of his duties in an acceptable and satisfactory manner, and that his accounts were in all respects correct. The defendant then urges that by reason of the fact that some of the cashier's defalcations were proven to have occurred prior to the last renewal, these representations were false, and therefore the bond was void. The difference between the lower court and the appellant relative to the instructions given arose very largely from this difference between the theory of the plaintiff, which was adopted by the court, and the theory of the defendant. A careful reading of the bond, and of the questions and answers in the schedule that defendant claims were made conditions of the bond in this respect, will show that the bank stated that an examination would be made monthly by its auditor, and in the application for renewals stated that the cashier's accounts had been examined and found to be correct; that he had performed his duties in an acceptable and satisfactory manner. At the time when the last application for renewal was made, the cashier had embezzled the bank's money, but the examination by the auditor had failed to detect such embezzlement. The cashier had covered his transactions with sufficient ingenuity to conceal them from detection, and therefore the auditor found the books and accounts to be correct, and so reported. The bank, not having detected, or having been apprised of his malfeasance, was satisfied with his administration, and therefore his duties were being discharged at that time in an acceptable and satisfactory manner. The court

properly instructed the jury on this feature of the case in the following language: "In this case, if the bank, in making its application for the bond or for its renewals, did so honestly in good faith, and without any notice or any knowledge of any dishonesty or irregularity on the part of McDowell, and after the examination had of the books and accounts of the cashier, then I charge you that the defendant, the surety company in this case, will not be relieved from liability on its bond because such application may have contained statements in regard to the correctness of such accounts which may have been, in fact, untrue, but were not known to the bank to be untrue after making such examinations of such accounts honestly and in good faith." That instruction goes further in reference to the truth of the statement in regard to the correctness of such accounts than is necessary. The court seemed temporarily to have lost sight of the fact that the bank did not, in its application for the bond, or for any of the renewals, state to the surety company that the accounts of the cashier were correct; that is, the bank did not guarantee the correctness of the cashier's accounts. It only stated, and if such statement could be called a guaranty, only guaranteed that his accounts "had been found correct" by its auditor on his examination of them. To the truth of the latter statement they should be held rigidly; and, as they did not make the former statement, and there was no evidence in the record tending to prove that they did in any instance make it, it was not necessary that the instruction go that far.

This brings us to the consideration of the refusal by the court of the instructions to the jury requested by the appellant, which is the third ground for reversal that is seriously urged. There were several special instructions requested by defendant; and, although the language differed somewhat in them, they are all of them based upon the proposition that the renewals were conditioned upon the bank's taking the usual and necessary precaution to detect defalcations and embezzlements, and upon the theory that the conditions of the bond and the application for the renewals, reasonably interpreted, contemplated the auditing of the books and accounts of the bonded cashier, by a person reasonably competent to make such auditing, and also contemplated the taking of all

reasonable precautions to detect dishonesty. The answer to one is the answer to all.

If the bond had been thus conditioned, and the plaintiff had alleged compliance with that requirement, or the defendant had alleged noncompliance therewith, the question for the jury would have been, Did the bank adopt reasonable precautions, were the required examinations made by competent examiners, and were the concealments and falsifications in the books that left undetected from month to month the defalcations of the cashier such as could have been detected by a reasonably diligent and thorough examination? Neither the complaint nor answer, however, present that question. The plaintiff did not allege, nor did the defendant deny, the competency of the auditor, nor did the defendant in its answer set up, among its affirmative defenses, that the auditor was inefficient, or that monthly examinations by the auditor did not constitute a reasonable precaution for the detection of thefts or defalcations, but, among its affirmative defenses, charged that an agreement by the bank that an examination of the books and a count of the money and securities would be made monthly by its auditor was the basis for the contract of indemnity in the surety bond, and that whatever defalcations have occurred have been permitted to occur by neglect of the bank to make such examinations as above mentioned. The questions of fact thus presented by the pleadings to the jury for its determination were whether the bank had the monthly examinations made as promised in the schedule, and whether, on the 29th of March, 1907, the books and accounts were examined and found to be correct as stated, or whether, no such examination or finding having been made, the renewal was obtained by the false and fraudulent representation of the bank that they had been. The jury, therefore, was not called upon to go into the fidelity or diligence of the auditor, or the reasons why the defalcations were not earlier discovered, further than to determine whether the examinations were made by the auditor of the bank, and whether the bank honestly and in good faith had those examinations made as stipulated in the schedule that it would have, and as stated in the application for renewal that it had done. The record discloses substantial evidence to sustain a verdict, therefore the court properly refused to instruct the jury to find for the defendant.

The seventeenth instruction requested was given by the court elsewhere, in almost the identical language of the request, as shown at folio 854 of the abstract of record, notwithstanding the competency of the auditor had not been put in issue, either by the pleadings or the condition of the bond.

The eighteenth instruction requested is to the effect that the renewal of the surety bond for the year beginning February 10, 1907, was made upon the following certificate as the basis of such renewal; then cites the language of the report made May 6, 1907, of the examination of the accounts and the finding of them correct, and the acceptability of the cashier, followed by the instruction: "If you find from the evidence in this case that this certificate was untrue, the plaintiff cannot recover for any defalcation accruing subsequently to February 10, 1907." The substantial part of that instruction was given by the court, and has been referred to above. The vice of the instruction as requested by the appellant lies in the fact that the jury might honestly misunderstand it, and apply the word "untrue" to the correctness of the cashier's books and accounts, instead of applying it to the statement that an examination had been made, and that such examination found them correct. The instruction having been substantially given in a correct statement of the legal principle involved, it is not incumbent upon the court to give the requested instruction.

We find no reversible error in the record. The judgment of the lower court is therefore affirmed.

SLOAN, CAMPBELL, and NAVE, JJ., concur.