[Civil No. 2713. Filed October 2, 1928.]

[270 Pac. 629.]

CENTRAL COPPER COMPANY, a Corporation, Appellant, v. MARGARET B. KLEFISCH, Appellee.

Mr. C. O. Anderson, Mr. J. T. Kingsbury, and Messrs. Kingan & Darnell, for Appellant.

Messrs. Knapp, Boyle & Pickett, for Appellee.

LOCKWOOD, J. — Margaret B. Klefisch, hereinafter called plaintiff, brought suit against Central Copper Company, a corporation, hereinafter called defendant, for damages for personal injuries claimed to have been received by her as the result of an automobile accident for which defendant was legally responsible. The case was tried before a jury, which returned a verdict in favor of plaintiff in the sum of $25,000. After the usual motion for new trial was overruled, defendant brought the case before us for review.

There are four assignments of error, which we will consider as seems advisable. The first is that the evidence did not support the verdict and judgment. It is, of course, the well-established rule of law in this state that this court does not weigh the evidence on an assignment of this nature. If there is sufficient competent evidence in the record, which, if believed by the jury, would as a matter of law sustain the verdict, the assignment is not well taken. *Durazo* v. *Ayers,* 21 Ariz. 373, 188 Pac. 868; *Leadville Min. Co.* v. *Hemphill,* 17 Ariz. 146, 149 Pac. 384; *Pacific Gas & E. Co.* v. *Almanzo,* 22 Ariz. 431, 198 Pac. 457. In order that we may determine this assignment, it is necessary that we consider the complaint and the evidence in support thereof. The complaint alleges, after setting forth the formal requirements:

"That prior to and on or about January 19, 1924, plaintiff was in the employ of defendant at its offices and principal place of business aforesaid, and then and there defendant did keep and maintain in connection with the employment of plaintiff and other similar persons and employees an automobile or motor vehicle for the convenience and recreation of its employees, of whom this plaintiff was one, and did so keep and maintain the same and provide a chauffeur therefor, as a part of the employment and maintenance of such employees and this plaintiff, and did then and there cause said automobile or motor vehicle

to be operated with such driver or chauffeur as aforesaid, for the use of such employees and this plaintiff, by reason of the isolation and remoteness of the community at and in the vicinity of Mascott and the offices and principal place of business of defendant as aforesaid. That it was the general use of such motor vehicle or automobile, and it was the duty and within the scope of the employment of the driver or chauffeur thereof to carry, transport, and drive such employees, of whom this plaintiff was one, from place to place, for convenience and recreation, and. on or about said 19th day of January, 1924, the defendant did cause and authorize the use of said motor vehicle or automobile for certain travel, and in the ordinary scope and course of his employment did authorize the driver thereof to drive said automobile or motor vehicle upon certain travel, and did authorize certain persons and this plaintiff to then and there travel in said motor vehicle or automobile with the said driver as aforesaid. . . . ''

It then sets up that the driver furnished by defendant was careless, incompetent and inexperienced, and that he operated the automobile in question in such a negligent manner that plaintiff was seriously injured thereby. The complaint concludes with the usual prayer for relief in the sum of $100,000. There was a second cause of action also set up in the complaint, but, as plaintiff elected to stand on her first cause, we need not consider the second.

There is no question but that the evidence is sufficient to show that plaintiff was very seriously injured as a result of the carelessness of the driver of the automobile in which she was riding at the time of the accident. The dispute is as to whether defendant is legally responsible for such negligence. The principal evidence upon which plaintiff relies to sustain the burden of proof which rests upon her on this point consists of her own testimony, that of the driver, and that of her sister. Plaintiff testified in substance that she had worked for defendant com-

pany from February, 1920, until January 5, 1924, in Pittsburgh, Pennsylvania. At that time defendant closed its Pittsburgh offices, and plaintiff came to Arizona to continue her employment here. Her compensation was to be $125 per month, with room, board and laundry in addition. While en route to Arizona, T. M. McCauley, president of defendant company, met plaintiff, in company with two other ladies employed by the company, on the train traveling between El Paso and Willcox. Plaintiff then testified as follows in regard to a conversation with McCauley, which she claims occurred at that time:

"A. Mr. McCauley had, of course, expressed his delight at my being able to come along. He further stated that they were going to do everything in their power to make the girls who had left their homes, to be practically isolated in the Central Camp, to do everything that they could to make them comfortable; the board would be free, the rooms and laundry, and other little incidentals. He stated that he had bought a new car for Mr. Tout, and the one he was using was to be maintained for the girls, that they might take the car out at any time, provided they secured permission from Mr. Stephenson, who was to be in charge, and also provided they didn't abuse the privilege; that the car was to be maintained for that purpose, as the girls would have no other way of getting down from the hill.

"The Court: What do you mean by 'from the hill'?

"A. Well, from the camp. It is twenty-some miles to Willcox, and the girls would have no way to get down; there is no trains, and they had no car other than what the company would supply to them. He mentioned the name of the car, and said that it was practically a new car; said that Mr. Tout hadn't driven it very many miles. He seemed quite delighted with his own idea of having this car for the girls."

On Saturday, the 18th of January, plaintiff and several other employees of defendant had a conver-

sation, in which it was suggested that they have an auto party that evening. There were present at the conversation plaintiff, Mrs. Hummer, Miss Dunn, Mr. Kirby, Mr. Ramsey, and Mr. Morrison, all being employees of defendant. It was agreed among them that Kirby should see Stephenson, the person who McCauley had told plaintiff must grant permission for the use of the company car for pleasure trips. Later Kirby reported to plaintiff that Stephenson had granted the permission. The party, consisting of all the persons above named, except Ramsey, started about seven P. M., but, as the car they were using was somewhat crowded, plaintiff rode as far as Willcox with Mr. Tout, one of the officers of the company, and then got in the car occupied by the other members of the party, and driven by one Whiteside, who was employed as chauffeur by defendant. The accident occurred on the road between Willcox and Cochise. Plaintiff was taken to the hospital in Tucson, and while she was there was visited by Mr. McCauley, the president of the company, Mr. Stephenson, its vice-president, and Mr. Prout, its general manager. Plaintiff testified as follows, concerning statements made during the course of these visits:

"A. The first conversation that I can recall was with Mr. McCauley, two weeks from the date of the accident, on or about two weeks from the date of the accident, in which he came in and expressed his deep sympathy that the accident had occurred at all; made mention of the fact that the driver should be discharged on account of his carelessness; that they should have known before the car left what kind of a driver they had. Mr. Stephenson should have found out from Mr. Tout that the car was in capable hands. He said that he regretted it a great deal; nothing would be spared in getting me well, regardless of the time it took; that I was entitled to it, in consideration that I would no longer have my health. He was most emphatic in the point that they should have known who had the car when it left the hill, and if

Mr. Stephenson didn't know at that particular time he should have gone to someone who did know, who had the car, and who was taking it out, and how many were in the car. There was six in the car at the time. Mr. Tout stated his sympathy; said that the car was never permitted to go with six people in it. It should never have left the hill with six passengers in the car; that, had he known it, he would never have given his consent, because he knew from the beginning that the driver wasn't capable of taking the car; that he didn't know the road. Mr. Stephenson also said the same thing.

"Q. What did Mr. Stephenson say? A. He visited me in the hospital, and told me he felt deeply responsible, because he was in direct care and charge of those girls, for having taken us so far from home; that he felt deeply responsible for not having looked into the matter further than he did, to see who was taking out the car; that, regardless of Mr. McCauley's desire to discharge the chauffeur, he didn't feel he would do that, because he didn't feel the chauffeur was directly responsible; that they were responsible for the girls having given his consent to take it.

"Q. Did you have any further conversation with Mr. Prout? A. Mr. Prout said that he should have known, he felt he should have known anyway, that the car was going from the hill; that he didn't know it at the time that the car was leaving camp; that, had he known it, he never would have permitted it to go, because he knew the young man who drove it wasn't capable. They were all at that time most emphatically taking on the responsibility."

No objection was made by defendant to this testimony. Plaintiff's sister, Anne Klefisch, testified as follows, regarding a conversation held with Stephenson and Prout:

"Q. Did Mr. Stephenson or Mr. Prout at that time have any conversation with you with regard to this accident? A. They did. My mother was with me; they invited us over to dinner, and we went over, and while we were there they talked about the accident, and stated how sorry they were, and the responsibil-

ity they felt for allowing that car to go out. Mr. Stephenson said that he had given permission. He told me just exactly how the whole thing happened. He said that the girls had arranged a party, Mr. and Mrs. Morrison, Miss Dunn, Mrs. Hummer, and my sister had arranged for a party, and that he had given permission for that car, and also Mr. Kirby came and asked for the car, and he said it would be all right.''

No objection was made to this testimony, but, when the witness was asked as to whether any statement was made in regard to the cause of the accident, counsel for defendant objected as follows:

''We object; neither this witness, according to all of the testimony, nor the officers, were there, and they could not say anything about the cause of the accident, except perhaps to voice their own views. . . . He wasn't there at the time; it would be purely hearsay, and we insist that the investigation as to the cause of the accident is in the hands of the jury.''

The objection was overruled, and the witness answered as follows:

''A. He said it was carelessness on the driver's part; they didn't know what kind of a driver he was, and that he should have investigated, before the driver and the car went out, who was taking the car out that night. Mr. Prout stated that, if he had known, the car would never have left the hill that night. He said he knew the car wasn't in capable hands, and Mr. Stephenson should have ascertained or inquired about it before the car left the hill that night.''

Whiteside, the driver of the car, testified in substance that he was employed directly by Clifford, master mechanic, for defendant, as chauffeur for the particular car in question; that Clifford told him it was his job to drive the company officials and the girls wherever he was told to take them, and that he had before the accident taken orders from various officials of defendant as to the use of the car. On the night in question his specific instructions to take the

car out came from Kirby, who told him that he had seen Stephenson and arranged for its use. After the accident, the witness was informed by Clifford that McCauley did not want him to work as a chauffeur any more, and he was put to operating a hoist at defendant's mine.

This, in substance, is the evidence by which plaintiff attempted to establish that defendant was legally responsible for the accident. Defendant urges most strenuously the theory of plaintiff's case is that she was employed to work for defendant at a compensation which included the right to use the motor vehicle in which the accident occurred, and that because of such right existing on her part defendant was liable for furnishing an unskillful driver with the vehicle; that the evidence, taken in the strongest manner in favor of plaintiff, shows that there was no provision of the contract of employment granting her such right, and that the vehicle in question was merely loaned by defendant to Kirby to be used by him on a pleasure trip, and that under such circumstances no liability attaches to defendant. We think, however, the complaint and the evidence on behalf of plaintiff do not bear such a construction. The complaint does not claim that the use of the vehicle was part of the compensation of plaintiff, but merely that defendant maintained the vehicle for the purpose of providing recreation for its employees, of whom plaintiff was one, and that the accident occurred while the vehicle was being used for the very purpose for which it was maintained by defendant. It is the law that the owner of a motor vehicle, who invites a guest to ride with him, is bound to use reasonable and ordinary care for the safety of the guest. *Fitzjarrel* v. *Boyd*, 123 Md. 497, 91 Atl. 547; *Clark* v. *Traver*, 237 N. Y. 544, 143 N. E. 736; *Sharp* v. *Sproat*, 111 Kan. 735, 26 A. L. R. 1421, 208 Pac. 613; 42 C. J. 1055.

Nor is it necessary for liability that the conduct of the operator should be wilful or wanton, or have amounted to gross negligence. *Perkins* v. *Galloway,* 194 Ala. 265, L. R. A. 1916E 1190, 69 South. 875. If this be the law, much more is it so when the invitation was extended, not as the ordinary courtesy to a guest, but for the purpose of keeping defendant's employees better satisfied with the conditions of their employment, far away from the usual sources of amusement to the average person. Plaintiff could not have compelled defendant to furnish the car in question for her pleasure as a part of her compensation, but we think that, if it voluntarily assumed the responsibility of providing this means of recreation for its employees, it was under the duty of seeing that their safety was cared for in a reasonable manner, just as if it had been furnished as a matter of contract.

But, it is contended, even on plaintiff's own testimony, it was necessary that she secure the permission of Stephenson, the vice-president of the company, before the car could be used, and that the evidence not only fails to show that she did secure such permission, but shows affirmatively that the car was loaned to Kirby for his own purposes, as an independent bailment, and was not used by plaintiff in pursuance of the promises of McCauley. Apparently defendant's theory is that the only way it would be liable would be for plaintiff to have personally asked Stephenson for the use of the car for her pleasure, and nothing else. We think this theory is not warranted by plaintiff's testimony. The reasonable inference to be drawn from her statement of McCauley's conversation is that, whenever any of defendant's employees desired to use the car for recreation, so long as Stephenson knew the general purpose for which it was going out, and approved, the car was

being used on company business, no matter by whom the particular request for its use was made, or which particular employee transmitted the request. If Stephenson made the statements after the accident which plaintiff's sister testified he did, and such statements could legally be considered by the jury, they are certainly sufficient to show that he did have such knowledge and gave his approval.

To sum up the evidence on behalf of plaintiff on the vital and disputed issues, it is that defendant's president told her a car would be maintained for the pleasure of the employees, to be used whenever Stephenson gave permission, and that after the accident Stephenson admitted in substance that he had given such permission for the use of the car in which the accident occurred, together with its driver. It is true that defendant's witnesses contradicted plaintiff and her sister on all the material portions of their testimony, but the veracity of the witnesses was a question for the jury, and that question has been resolved in favor of plaintiff. Under our familiar rule we cannot disturb the verdict on the ground of a conflict in the testimony, and the first assignment of error is not well taken.

The second assignment of error is that the court erred in overruling objections to the testimony of plaintiff and her sister as to certain alleged statements made by officers of defendant company. It is claimed by defendant that the admissions of officers of a corporation may be given in evidence against it only when the admissions are within the scope of the authority of the officers, and they are acting in the discharge of their duty when making such admissions. On examining the record, it is apparent that the admissions referred to are those alleged to have been made while plaintiff was in the hospital, by McCauley, Stephenson, and Prout.

That the general rule of law stated by defendant is correct is undoubtedly true. 22 C. J. 367, and cases cited. Does it, however, become material in the present case? It appears from the reporter's transcript that no objection whatever was made to the testimony of plaintiff in regard to these alleged admissions, nor was any objection made to the testimony of plaintiff's sister in regard to Stephenson's admission that he had given permission for the car in question to go out with the party which used it. When the question was asked, "Did he say anything about what had been the cause of the accident?" the objection which we have set forth previously was made, and when plaintiff's sister was recalled in rebuttal, and was asked in regard to the same conversation, an objection was made to the effect that the testimony offered should have been introduced in chief and was not proper rebuttal. Nowhere does it appear from the record that any objection was made to the alleged admissions on the ground that the officers of the company were without the authority to bind defendant by such admissions, until at the close of the case a motion to strike, based on that ground, was made.

It is the law that error cannot be predicated upon the erroneous admission of evidence, unless an objection is made thereto at the time, or at least as soon after it is given as the ground for objection appears. *Morris* v. *Everly,* 19 Colo. 529, 36 Pac. 150; *Wead* v. *St. Johnsbury etc. Ry. Co.,* 66 Vt. 420, 29 Atl. 631; *St. Louis & S. W. R. Co.* v. *Foster,* (Tex. Civ. App.) 89 S. W. 450.

In the present case, it was obvious, the moment the witnesses testified, that the evidence was being offered on the theory it was an admission as against the interest of the defendant. So far as the answers to which no objection was made, and no timely motion to strike was offered, are concerned, they were properly before the jury, and should be considered by them in

passing upon the case. *Biggs & Co.* v. *Langhammer & Son,* 103 Md. 94, 63 Atl. 198; *Blowers* v. *Southern Ry.,* 70 S. C. 377, 50 S. E. 19.

We will next consider the ones to which objections were made. The first objection was on the ground that the testimony was hearsay. It is plain, on examining both question and answer, that the answer was composed of two parts: First, an expression of opinion as to whether defendant's chauffeur was negligent; and, second, statements by the declarants of their personal duties in the premises. While this might have been objectionable, it did not come within the hearsay rule. It is very generally held that, where objection is made to the admission of certain evidence on a specific ground, it is a waiver of all other grounds of objection, and that, where evidence is admissible as against the objection raised, error in admitting it will not be imputed. *Rush* v. *French,* 1 Ariz. 99, 25 Pac. 816; *Priest* v. *Robinson,* 64 Kan. 416, 67 Pac. 850; 38 Cyc. 1397.

The last objection which was made was on the ground that the evidence was improper rebuttal. This is a matter purely within the discretion of the trial court, and, in the absence of apparent abuse of the discretion, such action will not be reviewed on appeal. *Moody* v. *Peirano,* 4 Cal. App. 411, 88 Pac. 380; *Buckingham* v. *Harris,* 10 Colo. 455, 15 Pac. 817; *Burnside* v. *Everett,* 186 Mass. 4, 71 N. E. 82; *Hale* v. *Life Indem. Co.,* 65 Minn. 548, 68 N. W. 182; 38 Cyc. 1355. We think, in view of the fact the evidence objected to was in substance a mere repetition of that already given by the witness in chief, and not objected to there on the proper ground, it was not an abuse of discretion for the court to admit it as against only the objection that it was not proper rebuttal. We conclude, therefore, that the court did not err in admitting the evidence as to the alleged statements of the witnesses McCauley, Stephenson, and Prout,

and further that, when it was admitted, it was before the jury for all purposes.

The third assignment of error is that the court refused to instruct the jury as follows:

"I instruct you that certain evidence has been admitted relating to certain admissions of liability of defendant alleged to have been made by Mr. Stephenson, vice president of defendant company, and Mr. Prout, its general manager; but such evidence is not admissible for the purpose of binding the defendant, unless said officers at the time of the alleged making of such admissions, if made, had authority to make such admissions for the purpose of binding the company, or unless they were made while engaged in transacting the business of said defendant; and, it not appearing from the evidence that such admissions came under either of the exceptions above designated by the court, you are instructed to disregard such admissions."

This is covered by what we have said in regard to the previous assignment. When evidence is once properly in the case, even though it might have been excluded by the right objection, it cannot be taken from the jury by instructions. *Coombs Com. Co.* v. *Block,* 130 Mo. 668, 32 S. W. 1139; *Phelan* v. *Bonham,* 9 Ark. 389; *Becker* v. *Becker,* 45 Iowa 239; 38 Cyc. 1395.

The fourth assignment of error is that the court erred in refusing to give the instruction requested by defendant on its theory that the car was used by the witness Kirby in his own private affairs. The substance of the requested instruction was given by the court of its own motion. It is the rule in this jurisdiction that, where a court correctly states the law in one portion of its instructions, it is not error for it to refuse to repeat the instruction in another form at the request of one of the parties. *Title Guar. & Sur. Co.* v. *Nichols,* 12 Ariz. 405, 100 Pac. 825; *Greene* v. *Hereford,* 12 Ariz. 85, 95 Pac. 105.

It appearing from an examination of the record that there is evidence therein sufficient to support the verdict, and that no reversible error was committed during the trial of the case, the judgment of the trial court is affirmed.

ROSS, C. J., and McALISTER, J., concur.