[Civ. No. 6669.   Third Dist.   Dec. 18, 1942.]

MARY B. WAITE et al., Respondents, v. PACIFIC GAS
AND ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, John J. Briare, John L. Brannely and W. H. Spaulding for Appellant.

Archibald D. McDougall and Philip C. Wilkins for Respondents.

THOMPSON, J.—This is an appeal from a judgment entered in favor of plaintiffs, following a trial by jury. The plaintiff, Helen Ruth Waite, was awarded judgment for $3,000 damages, and her mother, Mary B. Waite, was awarded the sum of $290, as special damages. In denying a motion for new trial, the court reduced the awards to plaintiffs to the sums of $2,000 and $234.14, respectively. This appeal is presented on a bill of exceptions.

Damages were awarded to the plaintiff, Helen Ruth Waite, as compensation for injuries sustained to her spinal column, as a result of falling in the aisleway of a street car. The damages awarded to the mother covered expenses for medical care in the treatment of her daughter's injuries.

The accident in question which caused the injuries to plaintiff occurred on January 9, 1940, at approximately 8:30 in the morning. On that occasion, plaintiff, Helen Waite, who was fifteen years of age, was on her way to school and had boarded the street car at Twenty-fifth and J Streets in the city of Sacramento, with the intention of proceeding thereon to Ninth and J Streets, at which point she would alight and continue therefrom by foot to school.

This street car on which Helen Waite was a passenger was operated by one man whose station was in the front of the

car. At the rear of the car there was provided an additional exit which is operated automatically by the weight of the passenger as he or she steps upon what is called the "treadle pedal." This operation opens the rear door and the passenger may then alight.

At a point approximately midway between Tenth and Ninth Streets as the street car proceeded westerly, Helen Waite gave the buzzer signal to stop, arose from her seat and proceeded toward the rear of the car. The occurrence of the accident is related by her in the following language:

"After the car crossed 10th Street the seat occupied by me had no other occupant. After the car crossed 10th Street and was approximately in the middle of the block I rang the buzzer to indicate my desire to get off the car. At that time the car was going 'just the normal rate of speed that a street car usually travels.' When I rang the buzzer I then stood up to get out and took a couple of steps out to the aisle, and turned around to go to the back of the car. At that time I had a binder and about four books and my lunch and my purse and I was carrying them in both arms. When I turned around to go back 'I took a couple of short steps, then the street car gave a quick and rather sudden jerk, and my feet just went out from under me and I fell.' 'It was just a quick sudden jerk, and my feet just went out from under me. My feet went towards the back of the car and I fell in a sitting position. I fell awfully hard. My head didn't hit the floor. My seat, my tailbone, came in contact with the floor or aisle-way. My feet went in front of me and I was sitting in a straight position. I remained there about a second. Then I got up and tried to pick up my books as best I could and went to the back of the car and got off. This jerk took place about the length of two street cars from the corner. The car continued on to the corner before it came to a complete stop. The car was at the corner when I got off the rear end. I stood on the plate at the end of the street car after I had picked myself up, the door opened and then I got down. I didn't notice any pain when I was getting off the street car but after I got down on the ground and started to walk a little bit there was a pain in the lower part of my back. The street car had gone on. I went on to school at 9th and G Streets. The accident took place around 8:30 o'clock. . . . The floor in the aisleway of the street car on this occasion

was just plank flooring, just a smooth surface; well, it was wet from people tracking the water in.' It was in that condition when the accident happened.''

On cross-examination Miss Helen Waite gave the following testimony:

"The floor of the street car was wet, as I would expect on that kind of a rainy day. It was the usual wet floor, or damp floor, that I would expect in a street car from people getting on or off. There was nothing unusual about it. That condition made the floor slippery. I wasn't holding on to the grips on the back of the seats at the time I was walking down the aisle of the street car just before I fell; I had my arms all full of books; I wasn't holding on to the uprights of the street car or anything else because I wasn't close enough to, and I couldn't have held on anyway because I had my arms full of books. I am as certain that I had my arms full of books as I am that the street car jerked. . . . Q. Now, this jerk that occurred, Helen, that you say occurred at the time you fell, that was just the usual jerk, wasn't it? A. It wasn't exactly the usual, no, because it was quick and sudden. Q. Well, it was a jerk that you had often observed on street cars before, was it not? A. While I was sitting, but not such a quick and abrupt jerk. Q. You never observed a jerk like that before while you were a passenger on a street car, whether you were sitting or standing? A. I had experienced jerks, but not so abruptly. Q. You experienced some kind of jerks on other occasions while you were sitting in the car, did you not? A. Yes, sir. Q. And it was what you would consider a usual jerk on a street car, was it not? A. Yes, but it was not abruptly. Q. What do you mean by not abruptly? A. Well, it was just a quick sudden jerk.''

This plaintiff also testified on cross-examination "that it was the combination of the jerk and the damp floor that caused me to fall.''

The motorman operating defendant's street car at the time of the accident died sometime prior to the trial of this case. No witness to the accident other than the plaintiff, Helen Waite, was produced. There was no attempt on the part of the defendant to establish any theory relating to the cause of the accident.

The appellant contends that the judgment of the trial court must be reversed for lack of proof of negligence on the

part of defendant; because contributing negligence as a matter of law was proved by plaintiff's own testimony; and for errors of law committed by the trial court in giving and in refusing to give certain instructions.

In support of the contention that the evidence fails to disclose any proof of negligence of the defendant it is submitted that the plaintiff's testimony describing her fall and the movement of the street car proved no more than the ordinary or usual action of a street car in slowing down and that, under the authorities, proof of a "violent" or "unusual" jerk of a street car is necessary to establish negligent operation thereof. In this connection it is urged that prejudicial error was committed in the giving of an instruction which permitted the jury to infer negligence from proof of injury to the plaintiff caused by "some movement" of the street car no matter whether slight or ordinary rather than to require proof of "some unusual movement." It is apparent from the language employed in this particular instruction that the court was applying the doctrine of res ipsa loquitur to the facts as presented in this case. The issues raised by defendant in that regard are therefore material in the determination of this appeal.

This instruction which gives application to the doctrine of res ipsa loquitur, without question, permits the jury to infer negligence on the part of the carrier upon proof of an injury resulting from "some movement" of the car, and consequently if, as contended by defendant, our Supreme Court has held under similar circumstances that an inference of negligence based on the doctrine of res ipsa loquitur may be drawn only where there is proof of an "unusually violent movement" of the car, and also if the testimony of plaintiff is susceptible to a conclusion other than to the effect that the movement of the street car was unusual or violent, the giving of the aforementioned instruction, it is conceded, would constitute prejudicial error and require a reversal of the judgment.

A number of comparatively recent decisions are relied upon by the defendant in support of its position. Considerable importance is placed on the decision of the court in the case of *McIntosh* v. *Los Angeles Ry. Corp.*, 7 Cal.2d 90 [59 P.2d 959]. In that case the plaintiff suffered injuries as a result of having been thrown through the window of a

street car as it rounded a curve in the track. A perusal of the opinion in the McIntosh case indicates that the court was not directly concerned with the application of the rule of res ipsa loquitur. Possibly that case may not therefore be considered as authority for the proposition that "some unusually violent movement" of the car is necessary in order to raise the inference of negligence under the doctrine of res ipsa loquitur. However, language used by the court in referring to the matter of proof does, at least in part, support defendant's position. That language is found on page 94 of the opinion and reads as follows:

"While it is true that a mere injury to a passenger does not place upon the carrier the duty of explanation, such proof, however, coupled with evidence that the injury was caused by an unusual movement of the car, does cast upon the carrier the burden of proving that the injury was due to some other cause than its own negligence. . . .

"In determining whether the movement of the car was so unusual as to show negligence on the part of the appellant in its operation, the nature of the accident and the effect of the car's movement upon the passenger may be taken into consideration."

In the case of *Gish* v. *Los Angeles Ry. Corp.*, 13 Cal.2d 570 [90 P.2d 792], cited by defendant, the complaint alleged that "the car gave a tremendous jerk, jerk or lunge, and landed me against that post, . . ." The court held that, notwithstanding allegations of specific acts, in addition to a general charge of negligence, the plaintiff was not deprived of the benefit of the doctrine of res ipsa loquitur, even though plaintiff produced little evidence of a substantial character of the specific acts and conduct of the defendant. On appeal it was held the trial court erred in directing a verdict for the defendant. The decision in the Gish case, *supra*, is of no aid in determining the validity of the instruction which gave application to the rule of res ipsa loquitur in the present case. There, the Supreme Court was concerned with the question of the application of the rule of res ipsa loquitur where plaintiff had alleged specific acts of negligence.

The contention of the defendant that there must be affirmative proof of an unusual or violent motion of the car in order to justify the giving of an instruction applying the rule of res ispa loquitur is most strongly supported by the decision in the case of *Jorgensen* v. *East Bay Transit*

*Co.*, 46 Cal.App.2d 189 [115 P.2d 556], wherein the trial court refused to give an instruction requested by plaintiff which read in part as follows:

"In order to make out a *prima facie* case against the defendant East Bay Transit Company . . . it is sufficient for the plaintiffs to show that the decedent, Frederick C. Jorgensen, received an injury that was one of the proximate causes of his death, and that such injury, if any, was sustained by the decedent while he was a passenger upon one of the automobile coaches of, and being operated by the defendant on Sacramento Street, in the City of Berkeley, and that said injury, if any, was sustained by decedent by reason of his being thrown against a seat in the interior of said automobile coach by the sudden starting of said coach by said defendant . . . after said coach had been stopped for the purpose of enabling the decedent to board it."

The appellate court upheld the action of the trial court in refusing to give this instruction. On page 192 of the opinion it is stated as follows:

"It will be noted at once that the instruction, in effect, would hold that the defendant would be liable for acts caused by the sudden starting of the coach whether by its ordinary movements or otherwise."

It was further said in that regard on page 193 of the opinion:

"The uncontradicted evidence was that the deceased was a passenger on one of the busses being operated at the time and place alleged in the complaint of the plaintiffs; that he fell back against the back of the seat he was about to occupy; and that his act was caused by the movement of the bus. The sole fact to be tried was whether there was an unusual or violent movement or jerk of the bus. . . . As to that fact it will be noted there was no conflict in the evidence. Plaintiffs' witness did not testify directly nor in effect that there was a *violent or unusual* jerk. Defendant's witnesses testified positively that there was not. Both sides had given direct evidence on the subject. In 45 C. J. 1206, the general rule is stated as follows: 'Hence the presumption or inference arising from the doctrine cannot be availed of, or is overcome, where plaintiff has full knowledge and testifies as to the specific act of negligence which is the cause of the injury complained of, or where there is direct evidence as to

the precise cause of the accident and all the facts and circumstances attendant upon the occurrence clearly appear.' The rule so stated obtains in this State.''

A petition for hearing by the Supreme Court was denied in this case. The Jorgensen case is authority for the rule of law that the evidence must show an unusual or violent movement of the car to justify the application of the doctrine of res ipsa loquitur. On the contrary it holds that the doctrine does not apply when the injury is caused by *usual or ordinary* movement. The argument of plaintiffs in the present case is that the instruction in the Jorgensen case, *supra,* was held improper because the evidence was not conflicting and that plaintiffs in that case failed to testify as to any perceptible jerk of the bus. It is inferred by plaintiffs that the court would not have declared the instruction in the Jorgensen case erroneous if it were not for the fact that the defendant's witnesses had all testified there was not a violent or unusual movement of the bus. With this contention we do not agree. The opinion of the court in the Jorgensen case is not so limited. It will be noted that one of the witnesses for plaintiffs in the Jorgensen case did testify that the bus started with a jerk. His testimony in that regard, which appears on page 192, reads as follows:

'' 'Well, to tell you the truth at the time I didn't think anything about it. I was sitting alongside the window. The bus started with a jerk and threw him back against the seat. I don't know how to describe it any more than that the bus started with a jerk. I cannot recall now whether I felt the jerk.' ''

The language of the opinion in the Jorgensen case clearly indicates that an instruction applying the rule of res ipsa loquitur which would permit the inference of negligence of the defendant, in the event of injury resulting from an ordinary or usual movement of the car, would be improper.

The case of *Mudrick* v. *Market Street Ry. Co.,* 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533], appears to be in direct conflict with the decision in the Jorgensen case, *supra,* in regard to the necessity of proof of unusually severe jerking of the car in order to authorize the application of the rule of res ipsa loquitur. In the Mudrick case there was evidence that the plaintiff was thrown from the running board of a street car as a result of a series of jerks. No testimony was given to the effect that the jerks were unusual or violent.

The defendant contended, as in this case, that it was error on the part of the court to give instructions on the rule of res ipsa loquitur which failed to contain language that the movement or operation of the car must be shown to be unusual in order to apply the doctrine. The court answered this contention at page 733 of the opinion, in the following language:

"Defendants seize upon the word, 'unusual' as used by the court in the above statement, and contend that the court has by its use determined that before the rule of res ipsa loquitur can be applied in a case where a passenger is injured by the movement of a street car, he must show that the movement was an unusual one. Evidently in the language used, the court simply followed the wording of the instruction which contained the word, 'unusual.' We have been cited to no other authority which holds that the movement of a car which inflicts injury upon a passenger must be shown to be an unusual movement before the rule of res ipsa loquitur can be applied. We have already referred to the cases of *Wyatt* v. *Pacific Elec. Ry. Co.* [156 Cal. 170 [103 P. 892]), *supra,* and *Steele* v. *Pacific Elec. Ry. Co.* [168 Cal. 375 (143 P. 718)], *supra,* where the true rule is announced and where there is no mention or any intimation which supports defendants' contention. Undoubtedly many other authorities could be cited if necessary, but we deem the above cases and the authorities therein cited to be sufficient for our present purpose."

The instructions on the subject of res ipsa loquitur which were given in the instant case conform to the rule applied in the Mudrick case, *supra.* Even though a petition for hearing by the Supreme Court was denied in the Jorgensen case, *supra,* which was decided some three years later, it cannot be maintained that the Jorgensen case establishes the rule of law in this jurisdiction, unless it is contended that the court in the Mudrick case wrongfully construed the decision of the court in the McIntosh case, *supra,* in declaring that, "No question was raised in that case involving the rule of res ipsa loquitur."

However, conceding for the sake of argument, but without so deciding, that the instructions given in the present case wrongfully permitted the jury to infer negligence of the defendant from "some movement" of the car rather than to have required an "unusual or violent" movement

thereof, it is our conclusion that the defendant was not thereby prejudiced under the circumstances of this case. Such instructions therefore did not constitute reversible error. The testimony of the plaintiff, Helen Waite, which was uncontradicted, and which constituted the only evidence relating to the circumstances of the accident, is in our opinion susceptible to one conclusion only, which is that the movement of the street car which caused her to fall was not under the circumstances of this case the usual or ordinary movements to be reasonably anticipated by a passenger. It must be borne in mind that the only evidence relating to the movement of the street car at the time the plaintiff received her injuries, is the testimony of the plaintiff herself, and this testimony stands uncontradicted. The situation in the Jorgensen case, *supra*, was materially different. In that case all witnesses for defendant testified positively that there was not a violent or unusual movement of the bus.

Assuming that liability should not attach to a common carrier for injury to a passenger as a result of the ordinary movements of coaches or cars, it does not follow that such movements must be described in any particular terms such as "violent," "unusually violent," or "unusual" before liability may attach therefor. On the contrary, any language reasonably construed which indicates a movement other than usual or ordinary is sufficient. The testimony of the plaintiff in the present case fulfills that requirement. As already stated, Helen Waite had gotten up from her seat in the car and was proceeding toward the rear exit when "the street car gave a quick and rather sudden jerk, and my feet just went out from under me and I fell. It was just a quick sudden jerk, and my feet just went out from under me. My feet went towards the back of the car and I fell in a sitting position. I fell awfully hard." On cross-examination, the following questions were asked, and answers given relating to the inquiry as to whether plaintiff had experienced the usual jerk of a street car: "Q. Now, this jerk that occurred, Helen, that you say occurred at the time you fell, that was just the usual jerk, wasn't it? A. It wasn't exactly the usual, no, because it was quick and sudden. Q. Well, it was a jerk that you had often observed on street cars before, was it not? A. While I was sitting, but not such a quick and abrupt jerk."

The foregoing testimony of the plaintiff relates to the

movement of the street car under particular circumstances, that is the movement of the car at a point near the middle of the block, after a signal to stop at the next crossing had been given. Any sudden jerk of the street car at that point would not be an ordinary movement and certainly would be unexpected. The testimony of plaintiff certainly indicates that she considered the movement of the car at that time as unusual, unexpected and violent. This evidence is not refuted in any way. In support of the conclusion that the jerk of the street car was of considerable violence, the plaintiff said, "and my feet just went out from under me. My feet went towards the back of the car and I fell in a sitting position. I fell awfully hard." The circumstances of the accident and the effect upon the plaintiff of the street car's movement are proper to be considered in determining whether the "sudden jerk" of the car was unusual. It is so stated at page 94 of the McIntosh case, *supra,* in the following language:

"In determining whether the movement of the car was so unusual as to show negligence on the part of the appellant in its operation, the nature of the accident and the effect of the car's movement upon the passenger may be taken into consideration."

We conclude that the testimony of the plaintiff, standing alone and uncontradicted, considered particularly in relation to the effect upon plaintiff of the car's movement, clearly indicates an unusual and severe jerk of the street car at the time of the accident.

The defendant earnestly contends that prejudicial error occurred in the trial court's refusal to give certain requested instructions to the effect that the law presumed that the motorman, at the time of the accident, was "taking ordinary care in his own concerns;" that he was "innocent of crime or wrong," and that he was "obeying the law." It is urged that the death of the motorman prior to the time of the trial entitled the defendant to the benefit of the foregoing legal presumptions, since he was the only one who could have explained the cause for the movement of the street car.

We do not agree with defendant's statement that the deceased motorman was the only one who could have explained the cause of the sudden jerking of the street car. The difficulty in obtaining other witnesses does not excuse the

absence of such evidence if it could have been procured. However, assuming that the motorman was the only person who could have testified to the cause of the street car's movement, or that he might have accounted for it by some sudden emergency such as the presence of a child on the track, as the appellant argues, the law appears to be well settled that instructions embodying the presumption of due care are improper in a case where the rule of res ipsa loquitur applies. In *Smith* v. *Hollander*, 85 Cal.App. 535 [259 P. 958], in which case the rule of res ipsa loquitur was applicable, the trial court's refusal to give defendant's requested instructions regarding the presumption of due care was held to have been proper. At page 540 of the opinion in that case the court said:

"Where it was proper to instruct on this doctrine it was proper for the court to refuse defendant's requested instructions VIII and IX upon the presumption of defendant's freedom from negligence."

Precisely the same language is contained in the opinion of the court in the case of *Moeller* v. *Market Street Ry. Co.*, 27 Cal.App.2d 562 [81 P.2d 475], wherein the defendant requested instructions based upon the presumption of due care. That language at page 567 of the opinion is as follows:

"An instruction that the law presumes that the carmen used the requisite care and acted as reasonably prudent persons was properly refused as the doctrine of *res ipsa loquitur* raised an inference of negligence."

The rule of law enunciated in the two cases from which we have previously quoted specifically determines that instructions based upon the presumption of due care are not proper where the rule of res ipsa loquitur applies. We are unable to discover any language in those or any other cases which qualifies the application of this rule of law. The cases cited by the defendant in support of its contention that instructions based upon the legal presumption of due care should have been given have no application to a situation wherein the rule of res ipsa loquitur is properly invoked. The application of the doctrine of res ipsa loquitur raises an inference of negligence against the defendant. It would be contradictory for the court also to instruct the jury there is a presumption the defendant acted with due care. The defendant has cited the case of *Smellie* v. *Southern Pacific*

*Co.*, 212 Cal. 540 [299 P. 529], in support of its position. The Smellie case is concerned with the application of an instruction based upon the "presumption of due care" but not in connection with the rule of res ipsa loquitur. This case is not in point. The court did not err in refusing to instruct the jury on the "presumption of due care" under the circumstances of this case.

We are unable to agree with defendant's contention that the plaintiff, Helen Waite, was guilty of contributory negligence as a matter of law, even though she admitted that she did not grasp the handles of the seats as she stepped toward the rear of the car. The question as to whether this failure on her part constituted negligence which was a contributing cause of her injury was one for the jury. The case of *Babcock* v. *Los Angeles Traction Co.*, 128 Cal. 173 [60 P. 780], cited by plaintiff, is in point in regard to that issue. In the Babcock case the plaintiff received injuries as a result of having been thrown from a moving street car as it rounded a curve. The following language appears at page 179:

"The defendant cannot claim that it was negligence on the part of the plaintiff to stand up while riding, or to ride upon the outer part of the car, after it had assumed to carry him as a passenger, and had not furnished him with any seat upon the inside of the car. The fact that the plaintiff had certain packages in his right hand, and attempted to take hold of the rail with his left hand, was not necessarily a contributing cause of his injury. *If he was authorized to believe that he could get off before the curve was reached, he would not need either hand to protect himself against any lurch of the car.*" (Italics added.)

Under the circumstances of the present case, considering the speed of the street car and its position in the middle of the block, the jury had a right to conclude the plaintiff was justified in believing she could reach the rear exit of the car before it came to a stop. We may therefore not hold that her failure to grasp the seat handles constituted contributory negligence as a matter of law. The fact that the aisleway of the street car was wet at the time of the accident was certainly proper for the jury to consider, but does not constitute the action of plaintiff negligence as a matter of law.

The trial court, except as above stated, fairly instructed

the jury. We have, we believe, answered all material issues raised by defendant on this appeal.

The judgment is affirmed.

Schottky, J. pro tem., and Adams, P. J., concurred.

A petition for a rehearing was denied January 16, 1943, and appellant's petition for a hearing by the Supreme Court was denied February 15, 1943.