## BRATT et al. v. WESTERN AIR LINES, Inc.

### No. 3556.

Circuit Court of Appeals.
Tenth Circuit.

July 30, 1948.

Sec, also, 155 F.2d 850, 166 A.L.R. 1061.

Brigham E. Roberts, of Salt Lake City, Utah (Parnell Black, of Salt Lake City, Utah, and William H. DeParcq and Donald T. Barbeau, both of Minneapolis, Minn., on the briefs), for appellants.

Forrest A. Betts, of Los Angeles, Cal., and Arthur E. Moreton, of Salt Lake City, Utah, for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The Bratts brought this action against the Western Air Lines, Inc.,[1] to recover damages for the alleged wrongful death of their father, Jack Raymond Bratt, who was a passenger on an airplane owned and operated by Western, and who was killed in the crash of the plane during a regularly scheduled flight from Salt Lake City to Los Angeles on December 15, 1942.

From an adverse judgment the Bratts have appealed.

In their amended complaint, the Bratts alleged that at all times prior to and during such flight, Western had exclusive control and management of such airplane and that the accident was one which would not have occurred in the ordinary course of things had Western exercised proper care; and that Western negligently maintained, operated, and controlled such airplane and, as a direct and proximate result thereof, it crashed and caused the death of Jack Raymond Bratt.

At the trial, the Bratts relied wholly on an inference of negligence under the doctrine of res ipsa loquitur.

The rule of res ipsa loquitur is applicable when, as in the instant case, the thing which caused the injury was, at the time of the injury, under the exclusive control of the defendant, and the accident was one which, in the ordinary course of things, does not happen if one having such exclusive control uses proper care. It creates an inference of fact and casts upon the opposite party the duty of going forward with evidence or risking that the jury will infer negligence from the occurrence.[2]

In his closing argument to the jury, counsel for the Bratts said:

"A violent effort was made to convince you folks that we have charged Captain Loeffler with terrible disregard of duty.

"Why, I can picture in my mind those last terrific moments; I can see that plane shooting down out of the air to destruction, to death; I can see that valiant boy in there fighting his heart out. Captain Loeffler went to his death simply because Western Air Lines violated the same duty to him that they violated to everyone else in that plane.

"We do not charge Captain Loeffler with a violation of duty. We do not charge him with stunting. We do not charge him with engaging in activity that was likely to cause death just to gratify any whim or caprice that might have actuated his activity at that time.

\* \* \* \* \* \*

"This proof demonstrated that this plane crashed to the ground bringing death to the occupants of that plane because of a structural weakness and failure—that is brushing all the rest of the cobwebs of this case aside and looking at it as it is. That is what this case it [is], a case of structural failure.

[1] Hereinafter called Western.

[2] Atchison, T. & S. F. Ry. Co. v. Simmons, 10 Cir., 153 F.2d 206, 208; Williamson v. Salt Lake & O. R. Co., 52 Utah 84, 172 P. 680, 682, L.R.A.1918F, 588; Zoccolillo v. Oregon Short Line R. Co., 53 Utah 39, 177 P. 201, 210-212; Angerman Co. v. Edgemon, 76 Utah 394, 290 P. 169, 171, 79 A.L.R. 40.

216

* * * * * *

"Now that is the only answer.

* * * * * *

"Now, it might be—it might be that after these boys had lost or were losing the control of the plane because of structural failure they did exert superhuman strength as described by these witnesses, to pull it out of the nose dive, pull it out in a zoom-up and caused the structural failure of the wing tips. But if that did happen, then the preceding conditions that brought them into that perilous condition was the failure of the right horizontal stabilizer which failed because the inspection had revealed not the existence of the structural defect. Now, let's see if that isn't the evidence in this case.

* * * * * *

"Every part and parcel of that testimony bespeaks of structural failure and the only defense is, 'We didn't discover it.'"

The trial court properly instructed the jury on the doctrine of res ipsa loquitur. After the completion of the general charge, in the course of a colloquy with counsel respecting a request that the court charge on the presumption that a person killed in an accident exercised ordinary care, the court said: "There is a rule undoubtedly that a person who is dead is presumed to have been in the exercise of due care, but of course it can be overcome by evidence." One of counsel for the Bratts then stated: "We agree with Your Honor on that." The court then stated: "I don't know whether I ought to give that or not." Counsel for the Bratts then stated: "I don't think so, Your Honor. I think we would take an exception. * * *" Counsel for Western then thereafter stated: "Your Honor, I don't know whether the Court—what the Court's conclusion was with reference to the presumption that a deceased person such as the pilot here exercised reasonable care for his own concern. Will the Court give that law or not?" The court then stated: "Yes, I think that ought to be the rule, supplemented by the statement in connection with it that negligence may not be inferred or pre-

sumed against it." Counsel for the Bratts then excepted on the ground that the last statement of the court was inconsistent with the rule of res ipsa loquitur.

It is a well-settled principle that the instinct of self-preservation and the disposition of men to avoid personal harm constitutes a basis for the presumption that a person killed in an accident was in the exercise of ordinary care.[3] Counsel for the Bratts contend that an instruction on the presumption last adverted to is improper in a res ipsa loquitur case, citing Smith v. Hollander, 85 Cal.App. 535, 259 P. 958, 959; Moeller v. Market Street R. Co., 27 Cal. App.2d 562, 81 P.2d 475; Waite v. Pacific Gas & Electric Co., 56 Cal.App.2d 191, 132 P.2d 311.

Whether the doctrine of the California cases should have been applied in the instant case we need not determine. That portion of the instruction "that negligence may not be inferred or presumed against it," rendered the instruction clearly erroneous.

However, we think the error is harmless. Counsel for the Bratts in his closing argument expressly absolved the pilot from any negligence and stated: "We do not charge Captain Loeffler with a violation of duty," and that "Loeffler went to his death simply because the Western Air Lines violated the same duty to him that they violated to everyone else in the plane." Moreover, counsel for the Bratts in his closing argument repeatedly stated that the sole cause of the accident was a structural failure and bottomed their case wholly on the contention that the jury should infer that Western had negligently failed to discover and repair the structural defect. In view of that argument, there was no issue for the jury to determine with respect to any negligence on the part of the pilot, Loeffler. It was affirmatively removed from the case. No instruction should have been given on that issue. An instruction on an immaterial issue which could not have misled or confused the jury constitutes no ground for reversal.[4] It is in-

---

3 Lewis v. Rio Grande Western R. Co., 40 Utah 483, 123 P. 97, 100; Northern Pac. R. Co. v. Spike, 8 Cir., 121 F. 44, 47.

4 Community Natural Gas Co. v. Lane, Tex.Civ.App., 133 S.W.2d 200, 203; Edwards v. Collins, 198 Mo.App. 569, 199 S. W. 580, 582; Holahan v. McGrew, 111

conceivable, in the light of the closing argument of counsel for the Bratts, that the jury would have returned a verdict for the Bratts on the theory that the pilot was guilty of negligence, had the challenged instruction not been given.

The sole occupant of the airplane who survived the crash was Arthur F. Gardner. He testified as a witness for Western. On his cross-examination, counsel for the Bratts asked this question: "Now you yourself made a claim against the company which was settled by the payment of a certain amount of money, isn't that true?" Counsel for Western objected. The trial court ruled that if the question was asked for the purpose of showing a settlement of the claim, it was improper, but that if it was asked for the purpose of showing that the claim was paid for the purpose of influencing Gardner's testimony, it was proper. Counsel for the Bratts disclaimed the latter purpose and asserted it was to show motive, bias, or prejudice. The ruling of the trial court was correct. Where several persons are injured in the same accident, a compromise with one cannot be shown in an action by another. The policy of the law is to favor settlement of controversies and not to discourage settlements by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent lawsuit by another person asserting a claim arising out of the same accident.[5] Proof of a settlement made as a cover to obtain favorable testimony from Gardner would have been admissible, but any such purpose was disavowed by counsel for the Bratts.[6] However, the court permitted the witness to answer the question and his answer was in the affirmative, and, clearly, the Bratts suffered no injury.

During the trial, counsel for Western made an offer to permit the court and jury to inspect a DC-3 airplane, which was the type of airplane involved in the crash. The trial court ruled that the inspection might be had. There was much technical testimony in the case and certainly an inspection of the airplane would have aided the jury in understanding that evidence. We fail to see how an offer to permit the jury to fly in an airplane in anywise prejudiced the Bratts. The suggestion that it terrified the jury would have reacted, it would seem, to the disadvantage of Western, not the Bratts.

The final contention of the Bratts is that counsel for Western was guilty of misconduct during the trial and in his argument to the jury. We have carefully examined the record. The conduct of counsel for both parties, during the trial, was not wholly exemplary or free from criticism. However, we are not convinced that such conduct on the part of counsel for Western either aroused the passion or prejudice of the jurors so as to prevent a fair trial or otherwise improperly influenced their verdict.

The judgment is affirmed.

---

Cal.App. 430, 295 P. 1054, 1059; Gerharter v. Mitchellhill Seed Co., Mo.App., 157 S.W.2d 577, 580; Oklahoma City v. Jones, 177 Okl. 432, 60 P.2d 617, 619; Texas Co. v. Brown Tire Co., 39 Ga.App. 353, 146 S.E. 920, 921; Great Western Coal & Coke Co. v. Cunningham, 43 Okl. 417, 143 P. 26, 28.

5 Hawthorne v. Eckerson Co., 2 Cir., 77 F.2d 844, 847; Paster v. Pennsylvania R. R., 2 Cir., 43 F.2d 908, 911; Hill v. Ililes, 309 Ill.App. 321, 32 N.E.2d 933, 937; Brown v. Pacific Electric Ry. Co., 79 Cal.App.2d 613, 180 P.2d 424, 426; National Battery Co. v. Levy, 8 Cir., 126 F.2d 33, 36.

6 Paster v. Pennsylvania R. R., 2 Cir., 43 F.2d 908, 911.