[L. A. No. 22274. In Bank. Aug. 1, 1952.]

DANIEL SCOTT, Appellant, v. HERMAN BURKE, Respondent.

[L. A. No. 22275. In Bank. Aug. 1, 1952.]

SAMUEL GERRY, Appellant, v. HERMAN BURKE, Respondent.

Mark F. Jones and W. L. Engelhardt for Appellant in L. A. No. 22274.

Knight, Gitelson & Ashton, Robert R. Ashton, Samuel A. Rosenthal and Leonard G. Ratner for Appellant in L. A. No. 22275.

Parker, Stanbury, Reese & McGee and Raymond G. Stanbury for Respondent.

Campbell, Hayes & Custer and W. R. Dunn, as Amici Curiae on behalf of Respondent.

SCHAUER, J.—These two actions for personal injuries arising out of the same automobile accident were consolidated for trial, judgments on jury verdicts were entered in defendant's favor, and plaintiffs appeal. We have concluded that, contrary to plaintiffs' contention, the jury were properly instructed and the judgments must be affirmed.[1]

The uncontradicted evidence, insofar as material to these appeals, is as follows: At 9 o'clock p. m. on May 23, 1948, defendant, the two plaintiffs, and three other men left Guaymas, Mexico, in a 1947 Cadillac sedan belonging to plaintiff Gerry. The car, less than a year old, had gone only 11,000 or 12,000 miles and was in excellent mechanical condition with good brakes and good tires with lifeguard inner tubes. The party had gone to Guaymas on a fishing trip, and had been sharing the driving. Defendant drove from Guaymas to Hermosillo, a distance of about 87 miles. Another member of the party was at the wheel during the four hour drive from Hermosillo to Nogales, on the border, where they arrived about 4:45 o'clock a. m. on May 24; defendant slept during this time. At Nogales defendant took over the driving again and proceeded north toward Tucson, Arizona; the

---

[1]It should be noted that the accident occurred in the State of Arizona, and that defendant makes no contention that Arizona has a "guest statute" (see *Central Copper Co.* v. *Klefisch* (1928), 34 Ariz. 230 [270 P. 629]), or that the California "guest statute" is applicable (see *Loranger* v. *Nadeau* (1932), 215 Cal. 362 [10 P.2d 63, 84 A.L.R. 1264]).

other members of the party fell asleep and remained sleeping until after the accident occurred. About an hour after the group left Nogales the automobile, still driven by defendant, traveled diagonally across the left half of the highway and off an embankment on the left side. "Skid marks" (according to the transcript, but from the context probably meaning *tire marks*), broken and recurrent as if the brakes had been repeatedly applied, released and reapplied, extended for a distance of 78 feet across the highway at an angle to the point where the car went over the embankment. At the site of the accident the highway was straight, level, and dry; it was daylight at the time and visibility was good although there was "a little haze." After leaving the highway the car traveled 114 feet to the edge of an arroyo, where there was a sloping bank of approximately 28 feet, at which point the wheel marks stopped for about 25 feet. The wheel marks then continued for 35 feet up the other side of the arroyo where the car came to a stop. It was badly wrecked and the parties injured.

A police officer reached the scene about 6:45 o'clock a. m., and after an investigation interviewed defendant at a hospital between 8 and 9 o'clock the same morning. The officer testified that defendant stated that he did not know his speed at the time of the accident, that he had previously been traveling at a reasonable and prudent speed, and that "I evidently went to sleep. I don't know what happened until I woke up at the hospital."

Defendant testified that he had no recollection whatsoever of the accident and could not explain why it occurred; that his first recollection thereafter was of opening his eyes behind the wheel, and the last recollection he had of any event prior thereto was of his driving of the car between Nogales and Tucson; that there was very little traffic on the road when he took the wheel at Nogales; that he did not remember applying the brakes or of being interviewed by the police officer; that he did remember being taken to the hospital and arriving there; that his highest speed was 60 miles per hour; that in his best opinion he did not fall asleep prior to the accident; that he had previously driven the automobile and was familiar with it. Defendant was rendered temporarily unconscious by the accident, and suffered a concussion of the brain and injuries to his head. Medical testimony was introduced to the effect that one who is knocked unconscious by a blow on the head may suffer a retrograde amnesia by

which his memory of events immediately preceding his unconsciousness may be obliterated for a period of from a few seconds to a number of hours, and that under such circumstances the injured person would be unable to recall any of the events which happened during the period blocked out of his memory by such amnesia.

Because the other persons in the car were sleeping, they were unable to testify as to the cause of the accident, but plaintiffs offered no criticism of defendant's driving while they were awake.

Upon this evidence the court instructed the jury on the res ipsa loquitur doctrine,[2] and also instructed that if the jury believed that defendant as a result of the shock of the accident was unable to remember and testify as to his own conduct or other facts of the accident then a presumption arose that he "was obeying the law and was exercising ordinary care and doing such acts as an ordinarily prudent person would have done in the same circumstances." (See Code Civ. Proc., § 1963, subds. 1, 4.) The court further instructed that "these instructions direct your attention to two conflicting rebuttable presumptions relating to the conduct of the defendant (one) that he exercised due care at the time of the accident which presumption arises in the event that you find that as a result thereof he is unable to remember the facts pertaining to the same, and (two) that he was negligent if you find that he was driving on the wrong side of the road, or that he permitted the automobile to leave the road in question entirely, or that he fell asleep at the wheel. If you find the facts to exist which give rise to these presumptions, then these conflicting presumptions constitute evidence, the effect of which is to be determined by you, not by the court; they are to be weighed and considered by you in the light of and in connection with all of the other evidence, and you are to give to them, and each of them, such weight as you deem proper;" and that "In determining

---

[2]The instruction reads as follows: "From the happening of the accident involved in this case there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant. That inference is a form of evidence, and if there is none other tending to overthrow it, or if the inference preponderates over contrary evidence, it warrants a verdict for the plaintiff. Therefore, you should weigh any evidence tending to overcome that inference, bearing in mind that it is incumbent upon the defendant to rebut the inference by showing that he did, in fact, exercise ordinary care and diligence or that the accident occurred without being proximately caused by any failure of duty on his part."

what caused the accident you are entitled to take into consideration the evidence of the physical facts and to draw reasonable inferences therefrom."

Plaintiffs contend that inasmuch as the res ipsa loquitur doctrine is applicable (and defendant does not dispute this; see *Druzanich* v. *Criley* (1942), 19 Cal.2d 439, 444 [122 P.2d 53]) the court erred to their prejudice in instructing the jury as to the presumption of due care, and that the judgments must therefore be reversed.

■ It is settled law that where alleged negligent acts and conduct of a decedent are at issue before the court and the "testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, . . . an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is . . . proper" except that if the fact proved by uncontradicted testimony produced by the party seeking to invoke the presumption, "under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case." (*Westberg* v. *Willde* (1939), 14 Cal.2d 360, 365, 367 [94 P.2d 590]; see, also, *Mar Shee* v. *Maryland Assurance Corp.* (1922), 190 Cal. 1, 9 [210 P. 269]; *Smellie* v. *Southern Pac. Co.* (1931), 212 Cal. 540, 560-561 [299 P. 529]; *Rogers* v. *Interstate Transit Co.* (1931), 212 Cal. 36, 39 [297 P. 884]; *Mundy* v. *Marshall* (1937), 8 Cal.2d 294, 296 [65 P.2d 65].) ■ One who by reason of loss of memory is unable to testify concerning his conduct at and immediately before the time of the accident is entitled to invoke the same presumption, subject to the same exception. (*Scott* v. *Sheedy* (1940), 39 Cal.App.2d 96, 101 [102 P.2d 575]; *Roselle* v. *Beach* (1942), 51 Cal.App.2d 579, 583 [125 P.2d 77]; *Eastman* v. *Atchison, T. & S. F. Ry. Co.* (1942), 51 Cal.App.2d 653, 667 [125 P.2d 564]; *Fietz* v. *Hubbard* (1943), 59 Cal.App.2d 124, 131 [138 P.2d 315]; *McNear* v. *Pacific Greyhound Lines* (1944), 63 Cal.App.2d 11, 15 [146 P.2d 34]; *Simon* v. *City & County of San Francisco* (1947), 79 Cal.App.2d 590, 598 [180 P.2d 393]; *Duvall* v. *T.W.A.* (1950), 98 Cal.App.2d 106, 110 [219 P.2d 463]; *Russell* v. *Andersen* (1951), 101 Cal.App.2d 684 [226 P.2d 350].) ■ This disputable presumption is by statute declared to be evidence (Code Civ. Proc., § 1957; see, also, §§ 1961, 1963(1)(4)), and is sufficient to support a verdict of a jury unless dispelled by the "irreconcilable" fact proved

by the party relying on it. (*Westberg* v. *Willde* (1939), *supra,* 14 Cal.2d 360, 365, and cases there cited; *Chakmakjian* v. *Lowe* (1949), 33 Cal.2d 308, 313 [201 P.2d 801].) It may outweigh positive evidence adduced against it. (*Smellie* v. *Southern Pac. Co.* (1931), *supra,* 212 Cal. 540, 549, and cases there cited; *cf. Speck* v. *Sarver* (1942), 20 Cal.2d 585, 588 [128· P.2d 16].)

Plaintiffs argue, however, that it is likewise settled in California by a series of decisions that where, as here, defendant offers testimony which if believed by the jury would entitle defendant to benefit by the presumption of due care, it is nevertheless reversible error to so instruct the jury in a case in which plaintiff is entitled to benefit by the res ipsa loquitur inference.

In *Smith* v. *Hollander* (1927), 85 Cal.App. 535 [259 P. 958], defendant's automobile ran onto the sidewalk and struck plaintiff, a pedestrian. It was held that the court correctly instructed the jury on the res ipsa loquitur doctrine, and that (p. 540) "Where it was proper to instruct on this doctrine it was proper for the court to refuse defendant's requested instructions . . . upon the presumption of defendant's freedom from negligence." No authority is cited for the last-quoted statement. It appears from the opinion in which such statement is made that the defendant driver herself there testified as to the events leading up to the accident; hence, the presumption of due care would have been unavailable to her regardless of whether res ipsa loquitur applied, and, upon the facts of the case, the ruling was correct.

In *Ellis* v. *Jewett* (1937), 18 Cal.App.2d 629, 634-637 [64 P.2d 432], defendants appealed from an order granting plaintiff a new trial on the ground of error in the instructions. The court had instructed on the res ipsa loquitur doctrine, and had also told the jury that "There is a presumption in law that . . . [defendant] was free from fault in driving the automobile, and *this is a presumption which continues throughout the entire case, and must be considered by you in deciding the issues involved in the case.* No presumption of negligence on the part of . . . [defendant] arises from the mere happening of the accident . . ." The court on appeal held that the res ipsa loquitur instruction had been proper and further held, without citation of authority, that the instruction on presumption of freedom from fault was therefore erroneous and prejudicial. Under the circumstances of that case we may assume that the ruling is correct but that

does not mean that the principle must as a matter of law inevitably be applicable in all res ipsa loquitur situations regardless of other pertinent circumstances. In the cited opinion it does not appear that defendant driver did not himself testify as to the events leading up to the accident; moreover, the positive instruction that there was a presumption of freedom from fault and that it "continues throughout the entire case," obviously states a proposition much more strongly and positively phrased in favor of defendant than does the instruction given in the instant case, to the effect that the due care presumption arose *only if the jury* believed that defendant was unable to remember and testify concerning the accident.

In *Moeller* v. *Market St. Ry. Co.* (1938), 27 Cal.App.2d 562, 567 [81 P.2d 475], a streetcar started while plaintiff, a passenger, was alighting. Judgment was entered on a verdict in plaintiff's favor, and on appeal by defendant it was held, in reliance on *Smith* v. *Hollander* (1927), *supra*, 85 Cal.App. 535, that "An instruction that the law presumes that the carmen used the requisite care and acted as reasonably prudent persons was properly refused as the doctrine of *res ipsa loquitur* raised an inference of negligence." In this case also, however, both the conductor and the motorman of the streetcar testified concerning the accident, and there was therefore no basis for reliance by defendants on the due care presumption regardless of the application of the res ipsa loquitur doctrine.

In *Waite* v. *Pacific Gas & Elec. Co.* (1942), 56 Cal.App. 2d 191 [132 P.2d 311], plaintiff was injured by a fall resulting from a sudden jerk of the streetcar on which she was a passenger. The car was operated by only one man, who died prior to the trial. No witness to the accident other than plaintiff was produced. On defendant's appeal from a judgment for plaintiff, following a jury trial, it was held that the jury was correctly instructed on the res ipsa loquitur doctrine, and that therefore (in reliance upon *Smith* v. *Hollander* (1927), *supra*, and *Moeller* v. *Market St. Ry. Co.* (1938), *supra*, defendant was not entitled to instructions on the presumption of due care. The court comments (p. 202), "The application of the doctrine of res ipsa loquitur raises an inference of negligence against the defendant. It would be contradictory . . . also to instruct the jury there is a presumption the defendant acted with due care."

In *Pezzoni* v. *City & County of San Francisco* (1950), 101 Cal.App.2d 123, 124 [225 P.2d 14], plaintiff, a streetcar passenger, was injured when the car "stopped with a sudden jerk." The jury found for defendants, and the trial court granted a new trial "on the ground of errors of law occurring at the trial." The jury had been instructed on both res ipsa loquitur and the due care presumption. On appeal by defendant the court commented that "The jury was thus faced with the metaphysical responsibility of weighing a presumption of care against an inference of negligence. The courts have held that in a res ipsa case it it not proper to give an instruction on the presumption of care. [Citing the Smith, Moeller, and Waite cases, *supra*.]" The holding was that because instructions had been given on both res ipsa loquitur and the presumption of due care, as well as because of other errors in the instructions, the trial court had acted within its discretion in granting the new trial. In this cited case, again, there is no suggestion that defendant claimed the existence of facts (death or loss of memory on the part of the operators of the streetcar) which would entitle it to the instruction as to the presumption of due care.

Assuming that the above cited and discussed decisions of the District Court of Appeal actually set forth the view contended for by the plaintiffs,[3] which would deny to a party in a civil action (whether plaintiff or defendant) against whom the res ipsa loquitur inference is applicable the benefit of the presumptions of due care and of innocence, where an otherwise acceptable basis for those presumptions has been established, we nevertheless conclude that sound considerations of law, logic and justice unite with impelling force against our acceptance and perpetuation of that view.

██  In California both inferences and presumptions are by statute declared to be evidence (Code Civ. Proc., § 1957), and are weighed by the jury with the other evidence before it. ██  Of the two, neither a presumption (disputable)[4] nor an inference is as a matter of law entitled to be accorded greater weight by the trier of facts than is the other.

---

[3] *Waite* v. *Pacific Gas & Elec. Co.* (1942), *supra*, 56 Cal.App.2d 191, appears to be the only one which upon its facts squarely presents the basis for the holding.

[4] Section 1961 of the Code of Civil Procedure provides that "A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted the jury are bound to find according to the presumption."

Any suggestion that a disputable presumption, merely as such, has greater weight than an inference is an erroneous concept. Thus, while an inference is defined in section 1958 of the Code of Civil Procedure as "a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect," and a presumption is declared to be "a deduction which the law expressly directs to be made from particular facts" (Code Civ. Proc., § 1959), there is no provision of law which requires that a disputable presumption must be accorded greater weight than the reason of the fact trier suggests should be given to an opposing inference. ■ Actually, an inference is nothing more nor less than a pertinent deduction drawn from circumstantial evidence; i.e., from evidence which is circumstantial as to the fact deduced. ■ And circumstantial evidence may outweigh, in convincing force, both the strongest of disputable presumptions (sometimes said to be the presumption of innocence; see discussion and cases cited in 8 Cal.Jur. pp. 190-192, §§ 265-266; and p. 279, § 339; pp. 290-291, § 346; p. 593, § 584; 10 Cal.Jur. 754, 762-764; *People* v. *Shorts* (1948), 32 Cal.2d 502, 507 [197 P.2d 330]) and direct evidence as well (*Gray* v. *Southern Pac. Co.* (1944), 23 Cal.2d 632, 641 [145 P.2d 561]; see 10 Cal.Jur. 1157-1158, and cases there cited).

■ The res ipsa loquitur doctrine raises "an inference of negligence, not a presumption." (*Anderson* v. *I. M. Jameson Corp.* (1936), 7 Cal.2d 60, 66 [59 P.2d 962].) ■ However, just as either an inference or a presumption may outweigh positive evidence adduced against it by the opposing party, so may either outweigh the other; i.e., it is for the trier of fact to determine under the circumstances of each case whether to give greater weight to an inference than to a disputable presumption which conflicts therewith, or vice versa. ■ Although disputable presumptions have sometimes been characterized as "the weakest and least satisfactory character of evidence" nevertheless, as hereinabove indicated, "When [a presumption is] controverted by other evidence, whether direct or indirect, an issue of fact is raised which it is the duty of the court to determine as in other cases, and its conclusion is conclusive upon an appellate court unless it is manifestly without sufficient support in the evidence (*Fanning* v. *Green* (1909), 156 Cal. 279 [282] [104 P. 308])." (*Simonton* v. *Los Angeles T. & S. Bank* (1928), 205 Cal. 252, 258 [270 P. 672]; see, also, *Smellie* v. *Southern*

*Pac. Co.* (1931), *supra,* 212 Cal. 540, 549, and cases there cited.) ■ Thus, it may be stated as a legal concept that it was for the jury, in the light of all the circumstances of the case in evidence before them, to determine whether greater weight should be given to the res ipsa loquitur inference or to the presumptions of innocence and due care which conflicted with such inference. More accurately what that legal concept means—and exactly what its application in the instant case[5] means—is this: That under appropriate circumstances, such as appear in this case, both the res ipsa loquitur inference and the disputable presumptions of innocence and due care are elements tending towards proof to be considered by the trier of facts; and that it is the function of the trier of facts to determine in the light of all the evidence in the case, including the opposing inferences and presumptions, whether the proof preponderates in favor of one party and against another, or is evenly balanced, and thereupon to resolve the issues in accordance with the rules relating to the burden of proof.

Plaintiffs, in further argument against the availability of the innocence-due care presumptions in any case wherein a party is entitled to the res ipsa loquitur inference, cite *Druzanich* v. *Criley* (1942), *supra,* 19 Cal.2d 439, 444, and similar cases. From Druzanich they quote in part as follows: "The application of the doctrine [of res ipsa loquitur] does not give a plaintiff an absolute right to a judgment in every case. [Citations.] It does not shift the burden of proof, and when the defendant produces evidence to rebut the inference of negligence, it is ordinarily a question of fact whether the inference has been dispelled. [Citations.] However, the trier of fact cannot arbitrarily disregard the inference. As stated in *Ales* v. *Ryan* (1936), 8 Cal.2d 82, 99 [64 P.2d 409] : 'The rule is well settled by a multitude of decisions of the appellate courts of this state to the effect that the inference of negligence which is created by the rule *res ipsa loquitur* is in itself evidence which may not be disregarded by the jury and which in the absence of any other evidence as to negligence, necessitates a verdict in favor of the plaintiff. It is incumbent on the defendant to rebut the *prima facie* case so created by showing that he used the

[5]Inasmuch as the two cases disposed of by this opinion were consolidated for trial and for argument on appeal they are sometimes referred to herein as a single case.

care required of him under the circumstances. The burden is cast upon the defendant to meet or overcome the *prima facie* case made against him.' '' Judgment for the defendant was reversed. In reaching its conclusion the court pointed out that defendant herself gave testimony which indicated a lack of due care on her part and completely failed to rebut the inference of negligence. By contrast, defendant in the instant case offered testimony which, if believed by the jury, entitled him to an instruction on the due care and innocence presumptions and to have such presumptions weighed by the jury together with the other evidence in the case. Clearly, the Druzanich case (and the same is true as to the similar cited cases) is not authority to the contrary.

Neither does reason suggest a contrary holding. That a portion of the evidence may consist of the inference of negligence which arises under the res ipsa loquitur doctrine would not seem to present an insurmountable obstacle to the jury in reaching its verdict. Although the allegedly negligent party against whom the res ipsa inference arises may by reason of death or loss of memory be himself unable to explain his acts and conduct, it will rarely if ever occur that other evidence of pertinent circumstances such as events occurring before the accident, as well as of conditions as they are found to exist thereafter, will not be available for presentation to and consideration by the jury. Thus, in the present case, it was shown that the automobile was in good condition, that the defendant was a competent driver, was familiar with the car, had been driving carefully and had had several hours rest and sleep shortly before the accident; furthermore, the physical evidence indicates that defendant driver while on his own side of the road applied his brakes and swerved, and thereafter repeatedly released and reapplied the brakes, thus giving rise to a permissible inference that he was confronted with some sudden emergency and was diligently endeavoring to cope with it; such inference, if drawn by the jury, would be a part of the evidence to be by it weighed with the other evidence, both direct and indirect, presented by the parties.

It is also to be noted that juries are frequently confronted with the necessity of deciding as to the truth or falsity of directly conflicting stories related by the witnesses before them, yet it would scarcely be suggested that the production by one party of positive testimony in his own favor would preclude his opponent from relying upon contra-

dictory testimony, merely because the jury might find difficulty in weighing the evidence and reaching a verdict.

Moreover, one of the theories underlying the doctrine of res ipsa loquitur, and a factor in determining whether it should be available in a case such as this, is the proposition that "a defendant in charge of an instrumentality which causes injury either knows the cause of the accident or has the best opportunity of ascertaining it, and the plaintiff, having no such knowledge, is compelled to allege negligence in general terms and to rely upon proof of the happening of the accident in order to establish it. [Citations.]" (See *Leet* v. *Union Pac. R. Co.* (1944), 25 Cal.2d 605, 619 [155 P.2d 42, 158 A.L.R. 1008]; *Anderson* v. *I. M. Jameson Corp.* (1936), *supra*, 7 Cal.2d 60, 64, the latter quoting from *Kenney* v. *Antonetti* (1931), 211 Cal. 336, 339 [295 P. 341].)

Where, as here, defendant offers evidence of his lack of memory and consequent lack of knowledge and of opportunity to explain the cause of the accident, it would appear unfair to deprive him of the presumption of due care merely because plaintiff relies on the res ipsa loquitur doctrine. The contrary holding in *Waite* v. *Pacific Gas & Elec. Co.* (1942), *supra*, 56 Cal.App.2d 191, and inconsistent implications in *Smith* v. *Hollander* (1927), *supra*, 85 Cal.App. 535; *Ellis* v. *Jewett* (1937), *supra*, 18 Cal.App.2d 629, 634-637; *Moeller* v. *Market St. Ry. Co.* (1938), *supra*, 27 Cal.App.2d 562, 567; and *Pezzoni* v. *City & County of San Francisco* (1950), *supra*, 101 Cal.App.2d 123, are disapproved.

Plaintiffs' further contention that the evidence fails to support the verdicts is untenable, since the presumptions of due care and of innocence, as noted hereinabove, constitute sufficient evidence to support the verdicts.

Finally, plaintiffs urge that it was error to give defendant's requested instruction on unavoidable accident. However, ". . . the so-called defense of inevitable accident is nothing more than a denial by defendant of negligence or a contention that his negligence, if any, was not the proximate cause of the injury." (*Parker* v. *Womack* (1951), 37 Cal.2d 116, 120-121 [230 P.2d 823], quoting from *Polk* v. *City of Los Angeles* (1945), 26 Cal.2d 519, 542-543 [159 P.2d 931].) Defendant does deny negligence in the present case, evidence was produced tending to show that he was confronted with a sudden emergency which caused him to apply his brakes and swerve off the highway, and the in-

struction complained of properly submitted to the jury the law applicable upon this tenable view of the evidence.

For the reasons above stated the judgments are affirmed.

Gibson, C. J., Shenk, J., and Spence, J., concurred.

TRAYNOR, J.—I dissent.

The facts and issues in these cases are simple and could easily have been presented to the jury in an intelligible manner. The record aptly illustrates how much confusion and prejudice can result when presumptions and inferences are regarded as evidence and a presumption is invoked against the party who already has the burden of proving that the presumed fact does not exist. (See dissenting opinion in *Speck* v. *Sarver*, 20 Cal.2d 585, 590 [128 P.2d 16].)

The automobile in which plaintiffs were riding veered from the right to the left side of the highway and crashed into the bank of a ravine. Plaintiffs were asleep at the time, and defendant driver testified that he had no memory of the occurrence. The automobile was in excellent condition before the accident, and skid marks indicated that the brakes were applied while it was still on the right side of the highway.

To recover judgment it was incumbent upon plaintiffs to prove that the accident resulted from defendant's negligence in operating the vehicle. To discharge this burden plaintiffs were entitled to rely upon the inference of negligence arising under the doctrine of res ipsa loquitur based on the fact that properly driven automobiles do not ordinarily leave the highway. (*Druzanich* v. *Criley*, 19 Cal.2d 439, 445 [122 P.2d 53].)

"An inference is a conclusion as to the existence of a material fact that a jury may properly draw from the existence of certain primary facts." (*Blank* v. *Coffin*, 20 Cal.2d 457, 460 [126 P.2d 868].) Unless the facts are such that only one inference may reasonably be drawn therefrom, it is ordinarily for the jury to determine in a particular case what inference, if any, should be drawn. (Code Civ. Proc., § 1958; *Blank* v. *Coffin*, *supra*, at p. 461.) If the doctrine of res ipsa loquitur is to be treated as one dealing with no more than a certain type of circumstantial evidence, the inference arising thereunder should be treated like any other, and even in the absence of evidence to the contrary, the jury should be compelled to draw it only if reasonable minds could not differ.

If, however, the facts are peculiarly within the knowledge of one of the parties, or a special relationship exists between them, there may be reason to require of defendant an explanation if he is to escape judgment against him. "Thus, when bailed goods are lost or destroyed, it is reasonable to require the bailee to prove that the loss was not owing to his negligence. (*George* v. *Bekins Van & Storage Co.*, 33 Cal.2d 834, 839-841 [205 P.2d 1037].) Again, when a carrier has undertaken to carry a passenger safely it is reasonable to enforce that duty by requiring the carrier to explain an accident. (See Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 185.) The relationship between an unconscious patient and those who have undertaken to treat him may also be one that justifies placing the burden of proof on the attendants if they are to escape liability for an unusual injury inflicted while the patient is unconscious." (*Raber* v. *Tumin*, 36 Cal.2d 654, 664 [226 P.2d 574], dissent.) Since in the ordinary case where an automobile leaves the highway, the driver will be the person best able to explain why the accident happened, it is not unfair to give the res ipsa loquitur inference arising under such circumstances the additional procedural effect accorded to a presumption and direct the jury to find defendant negligent if he fails to make any explanation. (See *Druzanich* v. *Criley*, 19 Cal.2d 439, 445 [122 P.2d 53]; *Ybarra* v. *Spangard*, 25 Cal.2d 486, 490 [154 P.2d 687, 162 A.L.R. 1258]; *Dierman* v. *Providence Hospital*, 31 Cal.2d 290, 295 [188 P.2d 12].)

In the present case, however, defendant introduced evidence that he was in no better position than plaintiffs to explain the accident. If the jury should believe this evidence, it would be unfair to give to the inference arising under the doctrine of res ipsa loquitur the procedural effect of a presumption, for the only justification for so doing would have disappeared from the case. On the other hand, the fact that defendant through no fault of his own may be unable to explain the accident in no way weakens whatever probative value the evidence of the happening of the accident and the surrounding circumstances may have. The jury should still be at liberty to draw the inference of negligence if it sees fit.

Accordingly, the jury should have been instructed to find defendant liable if it concluded that he had the ability to explain the accident and failed to do so. It should also have been instructed that if it found that defendant had no memory of the accident because of amnesia, it should base its verdict

solely on the evidence presented and find defendant liable only if it concluded that the accident was more probably than not the result of negligence on his part. Under such instructions the mental processes involved in reaching a verdict would not have been difficult. If the jury disbelieved defendant's evidence that he was suffering from amnesia, his liability would be established. If it believed that evidence, it would then have to decide only whether or not to draw the inference from the occurrence of the accident and the surrounding circumstances that defendant was negligent. If it could not decide whether or not to draw that inference it would find for defendant because of plaintiffs' failure to discharge their burden of proof.

Instead the jury was presented with a hopelessly confusing task. After instructing the jury on the doctrine of res ipsa loquitur and the presumption of due care the court stated: "These instructions direct your attention to two conflicting rebuttable presumptions relating to the conduct of the defendant (one) that he exercised due care at the time of the accident which presumption arises in the event that you find that as a result thereof he is unable to remember the facts pertaining to the same, and (two) that he was negligent if you find that he was driving on the wrong side of the road, or that he permitted the automobile to leave the road in question entirely, or that he fell asleep at the wheel. If you find the facts to exist which give rise to these presumptions, then these conflicting presumptions constitute evidence, the effect of which is to be determined by you, not by the court; they are to be weighed and considered by you in the light of and in connection with all of the other evidence, and you are to give to them, and each of them, such weight as you deem proper."

How could the jury understand this instruction in which new evidence is spontaneously generated? By what mental process could it weigh these rules of law or logic against the facts upon which it was told they were based? The jury might conceivably make some sense out of the part of the instruction that the presumption of negligence was evidence. That presumption or inference has a logical basis. The jury could understand that a presumption or inference of negligence might be drawn from the fact that the automobile left the highway. It might divine, from the instruction that this presumption constituted evidence that it should weigh, that the court was conveying only the idea that in

its deliberations the jury should keep in mind that some of the evidence would support an inference of negligence, and that in arriving at a conclusion it should consider that inference as a definite possibility.

When the jury turned to a consideration of the presumption of due care, however, it would find it impossible to apply any such reasoning as it might have applied to the presumption of negligence. Here it would see that there was no rational relationship between defendant's amnesia and his due care. The proposition that defendant had amnesia does not lead to the conclusion that he exercised due care. Accordingly, the jury could not assume that when the court described the presumptions as evidence, it intended only to call the jury's attention to the various logical inferences it might draw from the evidence. It could assume only that it must consider two new items of conflicting evidence whose nature it could not understand.

How then would it weigh this substituted evidence? These presumptions were not witnesses whose demeanor might be observed. The facts upon which they were based were not in conflict, so the jury could not look to them to determine which presumption was superior. It might in desperation conclude that the two presumptions cancelled each other, leaving neither evidence of negligence from the occurrence of the accident nor evidence of defendant's due care. Its mind now a blank, the jury would remember the instruction that the burden of proof was upon plaintiffs and, acocrdingly, return a verdict for defendant. Herein lies the vice of instructing the jury that a presumption exists that operates against the party having the burden of proof, and that the presumption constitutes evidence.

Upon plaintiffs rested the burden of proving that it was more probable than not that the accident was caused by defendant's negligence. That burden was enlarged by the instruction that there was a presumption of due care and that the presumption was evidence. Plaintiffs were thus placed under the burden, not only of proving by a preponderance of the evidence that defendant was negligent, but also of somehow dispelling additional "evidence" that the jury could not rationally evaluate. This additional burden was placed upon plaintiffs solely because defendant was unable to remember what happened. It is true that any disparity between the parties with respect to their sources of information may justify placing the burden of proof on one rather

than the other or creating a presumption in favor of the party with the burden of proof. Thus if the burden had been upon defendant to prove that he was not negligent, his inability to present evidence because of his amnesia might justify a presumption in his favor that he was exercising due care. Similarly, in jurisdictions where the burden is upon the plaintiff to prove that he was not guilty of contributory negligence, it is not unfair to create a presumption in his favor, if he is dead or otherwise unable to testify. In this case, however, defendant received all the procedural protection to which he was entitled when the burden of proof was placed upon plaintiffs. There is no general rule of law that the quantum of proof required of the party bearing the burden of proof increases beyond the usual preponderance of probabilities because his opponent happens to be ignorant of the facts. Even if one assumed the wisdom of such a rule, its operation should be explained to the jury in an intelligible manner. The jury should be instructed, not that there is a presumption that is evidence, but that because of defendant's inability to testify they should demand of plaintiffs a higher degree of proof. But should plaintiffs be required to prove their case by clear and convincing evidence or even beyond a reasonable doubt? Clearly, no such burden could in justice be imposed upon plaintiffs in this case. They were in no better position than defendant was to explain the accident. There was no danger that they might fabricate testimony that defendant would be helpless to refute. The evidence with respect to the accident was found only in the physical facts. Plaintiffs were entitled to have the jury consider those facts and then decide, unhampered by any presumption against them, whether it was more probable than not that defendant's negligence caused the accident. The evidence of defendant's amnesia was of course properly in the case. If believed, it served to prevent a directed verdict for plaintiffs on the basis of res ipsa loquitur. By showing why defendant could not explain the accident, it prevented the jury from inferring from his silence that if he spoke he would confess his case.

I would reverse the judgments.

Edmonds, J., concurred.

CARTER, J.—I dissent.

While I agree, generally, with the views expressed in the majority opinion with respect to the law applicable to in-

ferences and presumptions, it was error, in my opinion, to give an instruction on unavoidable accident. My views with respect to instructions of this character are set forth in my dissent in *Parker* v. *Womack*, 37 Cal.2d 116, 123 [230 P.2d 823]. Anyone familiar with the trial of personal injury cases can appreciate the prejudicial effect of such an instruction in a case of this type, and I would, therefore, reverse the judgment on this ground.

Appellants' petition for a rehearing was denied August 28, 1952. Edmonds, J., Carter, J., and Traynor, J., were of the opinion that the petition should be granted.