[Civ. No. 20476. Second Dist., Div. Two. Feb. 10, 1955.]

CHARLES YOUNG CARSON, Appellant, v. ALVIN
ETHON VINDING, Respondent.

M. C. Schrager for Appellant.

Jones & Wiener, William M. Anderson and Edward Clayton
Jones for Respondent.

MOORE, P. J.—The question for decision is whether the findings are supported by the evidence.

 The court found that defendant, doing business as Pacific War Surplus, had employed appellant to work primarily at his Huntington Park store, with incidental duties at his similar establishment in Bell Gardens; that about September 1, 1952, he authorized his agent to complete two checks, previously signed, and deliver them to appellant, which order was obeyed. Both checks are payable to the order of appellant in the sums of $4,450 and $1,500 and respectively dated August 5 and August 12, 1952; but respondent received no consideration for the checks; appellant knew at all times that respondent did not have sufficient funds to pay the checks on presentment; when the check for $4,450 was presented, payment was refused for lack of funds; defendant is not indebted to plaintiff in the sum of $6,679.15, but he owes plaintiff only $353.08 with interest from September 20, 1952; no moneys are owing defendant by plaintiff by reason of the latter's employment for any period; plaintiff has no property of defendant. During July and August, 1952, defendant was not of unsound mind; neither was he wholly or absolutely incompetent to understand the nature of his transactions, nor was he incapable of making a contract, and plaintiff knew such facts. That plaintiff has been fully paid for all services rendered to defendant and for all money advanced to or on behalf of defendant, but defendant still owes plaintiff the said $353.08.

### The Evidence

Although the finding is that respondent was not incompetent at the time the two checks were delivered to appellant, yet he was not a well man. His resistance was low and he was an easy prey to suggestion. In December, 1951, he suffered a skull fracture, a brain injury and the loss of an eye. He was confined to the psychopathic ward of the general hospital for 28 days in August and September, 1952, and thereafter for two months in a state hospital for the insane. During respondent's stay at the general hospital, appellant caused the issuance of the two checks to himself. Although they had been signed in blank, for them to have commercial value, they required the name of "C. Y. Carson" inserted as payee and the amounts of each to be inserted. Appellant visited respondent in the "acute section" of the psychopathic ward and there procured respondent to instruct the latter's bookkeeper to fill in the checks. Pursuant to the instruction, the

bookkeeper supplied the omissions in the checks and delivered them to appellant who was then operating respondent's business. The latter had been called upon to pay other checks that had been dishonored.

Contrary to appellant's testimony, respondent testified that it was agreed appellant's duties were: "to clerk as a salesman; occasionally visit the other stores; deliver merchandise; and possibly other errands." His wages were to be $50 a week and $15 a week as expenses. "In 1950, I raised his check allowance to $60 a week, with same expenses. From the time of his employment I paid him his wages until I entered the hospital and paid him the expense account. I never told him that I would pay him $50 a week as expense money."

Checks were received in evidence showing payments to appellant for 160 weeks in sums ranging from $45.80 to $52.32.

With reference to the check for $1,500, appellant testified that respondent promised him 10 per cent of the sales' price for "help to get the store in Bell Gardens closed out and sold." At the time of such asserted promise, respondent was in a sanitarium. Appellant concedes he did not locate the buyer or negotiate the sale; that during the three weeks while he was "digging out" stock for the Bell Gardens store he was doing his service at the Huntington Park store, the place at which he was regularly employed for which employment he was paid a salary. He did all of his "digging out" during the day. Respondent denied that he had promised to pay appellant any sum for services rendered in connection with the sale of such store.

### SUBSTANTIAL PROOF SUPPORTS FINDINGS

Where the evidence is conflicting, a finding by the trial court is final if the evidence supporting it is substantial. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].) ■ When two or more inferences can reasonably be drawn from the evidence, the reviewing court may not choose to adopt that which has been rejected by the trial court. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) Appellant had the burden to establish his allegations. Respondent's contradiction of appellant's testimony is itself substantial proof. ■ Appellant contends that the presumption that the checks were based upon a valuable consideration is the final proof on that subject. But such presumption is rebuttable. It was rebutted by the testimony of respondent and the trial court adopted that testimony. It cannot be reconsidered by the reviewing court for the purpose

of making a new finding. (4 Cal.Jur.2d p. 487, § 606; *Crawford* v. *Southern Pac. Co., supra.*) ▮ Although the evidence must be considered, it cannot be reweighed by the appellate court. (*Estate of Teel,* 25 Cal.2d 520, 527 [154 P.2d 384].) A rebuttable presumption issues from no divinity. Arrayed against valid writings or testimony, it is just so much proof. It may outweigh the memory of a witness who controverts it; but it might not, and in this instance, the court found that it did not: that finding is final. (18 Cal.Jur. 2d p. 495, § 68; *Scott* v. *Burke,* 39 Cal.2d 388, 398 [247 P.2d 313].)

But the aura surrounding the testimony of appellant was such as was not calculated to bestir the credulity of a judge. His testimony that his ill employer, while in the sanitarium, promised him $1,500 to assist in the sale of the Bell Gardens store, while such labors were a part of his general duties at the Huntington Park store; his visit to respondent in the psychopathic ward to obtain payments (1) for the asserted "bonus" for his alleged services in helping to make such sale and (2) for the $4,450 check, which amount appellant claimed was due him for salary despite the proof that weekly checks had been delivered to appellant for consistently reasonable sums for over two years—such facts depreciated the value of appellant's testimony and warranted the trial court in rejecting it. ▮ A court is neither required blindly to believe a witness nor to find in accordance with his testimony merely because he was not contradicted. (*Travis Glass Co.* v. *Ibbetson,* 186 Cal. 724, 727 [200 P. 595]; 4 Cal.Jur.2d p. 485, § 604.)

Appellant claims that from the beginning of his employment he was paid in cash large sums for expenses. He could give no satisfactory explanation why such sums should have been paid in cash, nor did he show that his expenses were as much as claimed. He did not report it on his income tax returns. His testimony that he was paid half of his wages in check and half in cash, because his salary was reduced with the promise to make it up later, justified the court in finding that his story of such withholding is highly improbable. ▮ The checks cashed by appellant were confirmatory of respondent's testimony that at the commencement of the employment the salary was fixed at $50 a week, expenses at $15 and that after 1949 the wages should be $60 weekly instead of $50. The trial court may reasonably have reasoned (1) that no sane employer would offer an advance in salary

to an employee if he could not deduct such increase as additional expense; (2) that any honorable man who has received or been entitled to receive $50 cash as wages would report it as "income"; that a toiler who permits his unpaid salary to grow to the sum of $4,450 without demanding a written acknowledgment thereof excites suspicion in the mind of a reasonably prudent court that the claim for such sum must arise out of the fact that his employer was too ill to direct his own affairs. Neither can the court be criticized for rejecting the demand for the $1,500 claimed as a bonus allegedly promised by respondent as extra compensation for helping sell the Bell Gardens store. The promise was allegedly made (1) while appellant was busy at his regular employment at Huntington Park; (2) while respondent was in a sanitarium; (3) and on the eve of the close of the escrow for the sale.

In view of the impression reasonably created by appellant's testimony, it cannot be said that the court acted arbitrarily in adopting the testimony of respondent as the basis of its decision.

Judgment affirmed.

McComb, J., and Fox, J., concurred.