[Civ. No. 22254. Second Dist., Div. Three. Nov. 22, 1957.]

JOSEPH PROFETA, Appellant, v. SEARS, ROEBUCK AND COMPANY (a Corporation), Respondent.

440

Harold W. Svenson and John F. Garvin for Appellant.

John L. Wheeler, John J. McCue and Theodore G. Morris for Respondent.

WOOD (Parker), J.—In this action for damages for personal injuries allegedly resulting from slipping and falling while in defendant's store, the jury returned a verdict in favor of defendant. Plaintiff appeals from the judgment entered upon the verdict.

Appellant contends that the evidence was insufficient to support the verdict.

On May 4, 1954, plaintiff, accompanied by his friend Mr. Ferris, went to the second floor of defendant's store for the purpose of buying a mirror. The mirror was not available, and plaintiff and Mr. Ferris went toward the escalator, intending to go to the first floor and leave the store. As they approached the escalator plaintiff was following Mr. Ferris, and just before plaintiff stepped onto the stationary metal plate, at the entrance to the escalator, Mr. Ferris was about 2 or 3 feet in front of plaintiff. Plaintiff testified that when he got hold of the moving handrail of the escalator he slipped and fell; the lower part of his back came in contact with a moving step; with the help of Mr. Ferris plaintiff got up when they were near the bottom of the escalator; when they arrived at the bottom of the escalator plaintiff leaned against a nearby counter, and Mr. Ferris went to get help; while Mr. Ferris was gone a woman, Mrs. Leigh, whom he had not known, spoke to him relative to his condition; she told him that she had seen some chocolate on the top plate of the escalator; then plaintiff lifted his foot, and Mrs. Leigh said that she believed that is "the same chocolate that was up on the top plate of the escalator"; he looked at his right shoe and saw a spot of brown on it which looked like chocolate; Mr. Ferris returned and assisted plaintiff in going to plaintiff's automobile. He testified further that there was a candy counter across from the escalator but he did not remember whether it was the up or down escalator. On cross-examination, he said that while he was following Mr. Ferris and approaching the escalator he could see a portion of the iron plate at the top of the escalator.

Mr. Ferris testified that as he approached the escalator he saw a brown or chocolate-like substance, which appeared to be candy, on the bright metal plate at the top of the escalator; he stepped over the substance and onto the escalator; plaintiff was behind him; after he (witness) was on the escalator and the escalator had gone three or four steps, the plaintiff bumped Mr. Ferris in the back of his legs; he (witness) turned and saw plaintiff in a kind of crouch, and he grabbed plaintiff's arm and helped him up; when they arrived at the bottom of the escalator plaintiff leaned on a nearby counter; then plaintiff said he had slipped on the plate at the top of the escalator and he believed that he had some substance on his shoe; plaintiff lifted his foot, and Mr. Ferris saw on plaintiff's shoe a smeared brown substance that looked like chocolate; then he (witness) went to find a doctor but he did not find one; he returned to plaintiff and assisted him in going to the automobile; then the witness went back to the store to get help and thereafter a nurse and a man went to the automobile. On cross-examination Mr. Ferris said that the substance which he saw on the top plate was about 3 inches wide and was toward the front of the escalator.

Mrs. Leigh testified that on May 4, 1954, about 2 p. m., while she was on the second floor of defendant's store, she saw some candy and popcorn on the stationary part (top plate) of the down escalator; the substance (candy and popcorn) was "chocolate-y," and was 3 or 4 inches wide and looked like a candy bar that had been mashed; she told one of the clerks about it and he said he would have it cleaned up; the clerk was wearing a badge marked "Sears"; she stepped over the substance and went down the escalator; about 30 minutes later she saw plaintiff leaning against a counter and holding his back; she asked him if he was sick; he said that he had fallen on the escalator—that his foot had stuck to some candy; he showed the bottom of his shoe and she saw candy on it; she told him that she was just up there and had told the clerk that there was candy on the escalator; plaintiff took her name and address; she did not know plaintiff before that day.

Mr. Rowland, called as a witness by defendant, testified that he was the security superintendent of the store involved here; it was his duty to patrol the store, observe hazards and protect the store; on said May 4 he was in the store and he heard the gong, which called him to the telephone; upon answering the telephone he was told that there

had been an accident; he went to a certain place and met Mr. Ferris and a nurse, and then the three of them went to an automobile where the plaintiff was; plaintiff said that when he was getting on the escalator he twisted his back, and that he had slipped on some candy or something; the witness, after staying at the automobile about five minutes, went into the store and inspected the down escalator and found it to be clean and free of extraneous matter; he did not see any extraneous matter on the top plate or on any of the steps of the escalator; he asked the employees in the adjoining divisions if they had seen an accident on the escalator or had seen anything that could have caused the accident; those employees replied in the negative; he asked two porters if they had cleaned the escalator within the last two hours; they replied in the negative; his inquiries were directed to 25 or 30 clerks. On cross-examination, he said there was no schedule for routine checking of the escalators by the porters; about 10 minutes elapsed from the time he heard the gong until he inspected the plate at the top of the escalator (it took him two or three minutes after the gong to get to the automobile— he stayed at the automobile about five minutes—it took him about three minutes to go from the automobile to the top plate).

Appellant's argument, regarding insufficiency of the evidence, is that there was no substantial evidence to support the verdict in that: the testimony of Mr. Rowland, the security superintendent of the store, did not create a conflict with the testimony on behalf of plaintiff; the superintendent's inspection of the top plate was made about 25 minutes after the accident and meanwhile a clerk or shopper might have removed the substance from the plate; the superintendent did not know the positions of the various clerks (whom he questioned) at the time of the accident; there was no evidence that he questioned all the clerks in the sections adjoining the escalator. It is obvious that many questions of fact were presented by the evidence. Some of those questions were: Did plaintiff slip and fall? Was there any foreign substance on the top plate? Was a foreign substance on the plate by reason of a negligent act of defendant? Was such a substance on the plate by reason of an act of a third person? If such substance was on the plate by reason of an act of a third person, did the defendant know, or should the defendant have known, of its presence in time to remove it before the accident occurred? The burden of proof was upon plaintiff to

prove his allegations of negligence on the part of defendant. The credibility of the witnesses and the weight to be accorded to their testimony were matters for the determination of the jury. ▇▇ The jury was not required to accept as true the statements of the witnesses, even though the statements were not contradicted. (*Carson* v. *Vinding*, 130 Cal.App.2d 652, 655 [279 P.2d 604].) The argument of appellant with respect to the superintendent's testimony seems to be that even if full credence be given to his testimony regarding his inspection of the escalator and his inquiries of clerks and porters, the accident could have occurred in the manner related by plaintiff. The fact that the defendant did not produce direct evidence that a foreign substance was not on the top plate at the time of the alleged accident would not warrant a conclusion that an accident occurred in the manner related by plaintiff. ▇▇ The testimony of the superintendent pertained to the clean condition of the plate about 25 minutes after the alleged accident, and to the lack of information on the part of nearby employees as to the happening of the accident and the presence of a foreign substance on the plate. Such circumstances were proper matters to be considered by the jury in determining the facts. As above indicated, many questions of fact were involved in the issues presented by plaintiff, and the burden of proof was upon plaintiff regarding those issues. Furthermore, there was a question of fact as to whether plaintiff was guilty of contributory negligence. There was evidence to the effect that plaintiff was following Mr. Ferris closely, and that plaintiff saw only a portion of the top plate as he approached the escalator. The evidence was sufficient to support the verdict.

Appellant contends further that the court should have given an instruction requested by him to the effect that the jury might consider the fact that the attention of persons who visit public stores is attracted ordinarily by the display of wares offered for sale and may be more or less absorbed by the transactions which they have in mind. (The instruction so requested was No. 213-E in book referred to as Book of Approved Jury Instructions.) The court did not err in refusing to give the requested instruction. Other instructions which were given were adequate.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.